**ROYAL INS. CO., Limited v. CITY OF MORGANTOWN, WEST VIRGINIA.**

**Civ. No. 420–W.**

United States District Court,
N. D. West Virginia.

July 31, 1951.

Steptoe & Johnson, James M. Guiher, Clarksburg, W. Va., for plaintiff.

Stathers & Cantrall, W. G. Stathers, Mary Frances Brown, Clarksburg, W. Va., for defendant.

BAKER, Chief Judge.

This action was instituted on October 29, 1947, just five weeks and five days after the subject of the insurance coverage was totally destroyed by fire. The relief sought is reformation of the insurance policy by changing it from a "Fire and Lightning" policy to a "Windstorm" policy. The ground for this reformation is mutual mistake.

The policy insures a city airplane hangar located on the Municipal Airport near the City of Morgantown, in Monongalia County, West Virginia. The policy was issued by N. F. Naret, an insurance agent for the insurer, Royal Insurance Company, Limited, a foreign corporation, and delivered to the City. The date of the policy is March 22, 1947, and the term is one year. On the outside cover, under the words "Peril Covered" are the words "Windstorm," Amount $22,000. The total premium is stated to be $44, and the insured as "City of Morgantown." At the end of these recitals, following the name of insured, are the words: "See Inside of Policy for Perils Covered." The number of the policy is 262500.

On the inside of the policy, the first page contains the following:

| Peril(s) | Amount | Rate | Premium |
|---|---|---|---|
| "Fire and Lightning........ | 22,000 | 20 cents | $44.00 |
| Extended Coverage (when endorsement attached) | | | |
| Windstorm and Hail (when endorsement attached) | | | |
| Additional Coverages (when endorsement attached) | | | |
| Total Premium | | | $44.00" |

No other coverages are mentioned, the amounts being left blank after each, and, immediately following the above list of perils is the following statement: "No insurance attaches in connection with the above listed Perils unless specific 'Premium' therefor is specified in the face of this policy (or in endorsement attached hereto)."

The second page of the contract contains the usual fine print form of agreement known as the "Standard Form," as required for all fire insurance policies issued in the State of West Virginia, Code of West Virginia, 33-4-7. The third page contains two attached forms, pasted to the standard form, one is designated Form No. T2, and reads "Tornado Form—Mercantile Property," and the other is designated "Clause No. 54," and styled "Windstorm and Hail Endorsement." The latter is attached to the form last above-mentioned. Neither of these forms contains any specification of premium, as required by the wording on the first page. The first page limits the coverage to an amount not exceeding "with respect to each peril, the amount specified above in Dollars." The only peril specified is "Fire and Lightning" in the amount of "$22,000."

The standard practice in the insurance business in West Virginia, when a policy is written, is for the agent to make two copies of the first page thereof. He keeps one copy in his files and sends the other copy to the West Virginia Inspection Bureau at Wheeling, West Virginia, which is commonly called the "stamping office." The West Virginia Inspection Bureau is a corporation organized to comply with certain statutory requirements in this state, and all of the companies writing fire insurance here are members of this Bureau. The copy sent to this Bureau is commonly known as the "daily report." It is the duty of the Bureau to inspect this copy for errors in wording, inconsistencies in the language, rates, and so forth, and to notify the agent of any corrections which should be made in the policy. After a copy of the policy is cleared by the Wheeling office of the West Virginia Inspection Bureau, it goes to a Charleston office of the same Bureau. The Charleston office has jurisdiction of the entire State of West Virginia, whereas the Wheeling office has jurisdiction of only a part of the State. After the copy is cleared by the Charleston office, it is sent to the home office of the company writing the insurance.

A copy of the first page of the policy sued upon here was duly cleared as correct by the Wheeling office of the West Virginia Inspection Bureau, the Charleston office of that Bureau, and the home office of the Royal Insurance Company in New York City. In the Wheeling office, Mr. E.

L. Karrer, who has had many years experience in checking insurance policies, stamped the daily report as correct. It was similarly cleared by the Charleston office, and in the New York office, Mr. Humrich and Mr. Ceasar examined the daily report as to coverage and raised no question regarding the same. This policy had been originally typed by Mrs. Naret, who has been for many years active in the insurance business and who was herself an agent of the defendant company.

After the hangar insured was totally destroyed by fire, the insurance company brought this action to reform the contract by changing it from a policy of fire and lightning insurance to one for windstorm and hail insurance. The company alleges that there was a mutual mistake in that the City intended to buy windstorm and hail insurance, and the company intended to write such coverage, but because of a typographical error the policy was issued as a fire and lightning policy. The company places much reliance upon the fact that a prior policy, covering this same building, had been written so as to cover damage from windstorm and hail only.

I deem that the law is so well settled as not to require the citation of authorities that an insurance policy is a contract between the parties thereto, and the fact that a prior contract between the same parties may have covered a different risk is immaterial. Counsel for the plaintiff agree with the general propositions that a court of equity will not reform a written agreement unless there is clear and convincing evidence of mutual mistake; that a court of equity will not reform a unilateral mistake; and that an insurance policy is to be strictly construed against the insurer and in favor of the insured. This is based upon the well-known fact that insurance policies are written by the insurer; the company hands the insured a packaged agreement, and the insured can either take it or not. The insured has nothing whatever to say about the terms and conditions of this agreement.

The policy sought to be reformed in this case was issued at a time when Mr. Prince, the regular City Manager of Morgantown, West Virginia, was absent from his post, due to certain physical disabilities contracted in the Armed Forces of the United States. The City Engineer, Mr. Snyder, was acting as City Manager during Mr. Prince's absence. After Mr. Prince returned to duty he, together with a committee of the town Council, reviewed all the insurance policies carried by the City. Mr. Prince and at least one member of the City Council testified definitely that they thought the policy in question insured the city hangar against loss by fire and, if they had not so thought, they would have immediately taken out fire insurance thereon.

I find that the above constitute the essential facts in this case. If there was any mistake in the issuance of this policy, the mistake was unilateral. Mr. Prince, the City Manager, and the committee of Council, had no knowledge whatever regarding the rate which would have been charged for fire insurance upon the building that was destroyed. Any one looking at the face of the policy would be bound to assume that it covered the risks stated thereon, which were for fire and lightning. The City did not make any mistake whatever in taking out this policy of insurance. It is well-settled law that equity will not reform a contract for a unilateral mistake. Harvard Law Review 23, p. 608; 2 Restatement of Contracts, Sec. 503; Travelers' Insurance Company of Hartford v. Henderson, 8 Cir., 69 F. 762, Certiorari denied 163 U.S. 708, 16 S.Ct. 1207, 41 L.Ed. 312; Holly Stores, Inc. v. Judie, 7 Cir., 179 F.2d 730.

Before a contract can be reformed for mutual mistake, the evidence of such mistake must be clear and convincing. A mere preponderance of the evidence is not sufficient. In the present case, I do not think that the insurance company has established its position by even a preponderance of the evidence. An insurance policy is presumed to contain the agreement of the parties. Metropolitan Life Insurance Co. v. Asofsky, D.C., 38 F.Supp. 464. And such policy is to be construed strictly against the insurer. Thompson v. Phenix Insurance Co., 136 U.S. 287, 10 S. Ct. 1019, 34 L.Ed. 408.

In this case the plaintiff has sought to minimize and explain away the alleged mistake in the preparation of the policy. The fact remains that this policy was either one covering risk from fire or lightning, or it was nothing. If the hangar in question had been destroyed by windstorm, the City would have been without remedy. The terms of the policy absolutely precluded any recovery from damage by windstorm. It is true that there was a windstorm rider attached to the policy, but no premium appeared upon said rider, and under the wording of the contract the rider without a premium was a nullity.

It is a well-settled principle that a court of equity will not relieve a party from a mistake caused by his own gross negligence. This principle is applicable in the present case. To begin with, the policy was physically typed by an experienced agent of the company. It was checked in the Wheeling office of the West Virginia Inspection Bureau, in the Charleston office of that Bureau, and by at least two people in the home office of the company itself. Surely, somewhere along this line the mistake, if it was a mistake, should have been discovered.

No one upon behalf of the insurance company raised any question about the coverage of this policy until the loss had occurred. Had this suit been brought before the fire destroyed the hangar, a different situation would have been presented. Then the company would have been in a position to offer a refund of the premiums, and the City would have been able to contract with some other insurer for the protection of its building. At this time it is impossible to put the parties in statu quo.

For the foregoing reasons, I will refuse the prayer of the plaintiff to reform the insurance contract involved, and direct that judgment in favor of the City of Morgantown be entered upon its counterclaim; such judgment to be for the face amount of the policy, plus legal interest from the date of the loss.

Counsel are directed to submit an order in accordance with this opinion.