BURCH *v.* WARGO.

1. GARNISHMENT—AUTOMOBILE INSURANCE—CONSTRUCTION OF POLICY—EVIDENCE OF INTENT.
It is not within the province of the court in a garnishment proceeding against the insurer under an automobile insurance policy to call the insured and take testimony as to what the effect of the policy was intended to be.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 6 Am Jur 2d, Attachment and Garnishment § 164 *et seq.*
[2, 5] 7 Am Jur 2d, Automobile Insurance §§ 41, 80.
[3] 6 Am Jur 2d, Attachment and Garnishment §§ 2, 9.

2. INSURANCE—RENEWAL POLICY—RESTRICTIVE INDORSEMENT.

   Typed-in words *Restrictive Indorsement* on renewal automobile insurance policy *held*, an effective bar against liability on part of insurer, where liability was sought to be imposed on the insurer contrary to the restriction.

3. GARNISHMENT—REMEDY.

   Garnishment is an extraordinary remedy that does not permit recovery unless all proper ingredients are present.

4. SAME—INSURANCE.

   Garnishment does not grant a greater right to a stranger to an insurance contract than is conferred upon the insured, the test being whether the principal defendant could have maintained an action against the garnishee and recovered as of the time of the service of the writ of garnishment.

5. SAME—RENEWAL AUTOMOBILE INSURANCE POLICY—RESTRICTIVE INDORSEMENT.

   Plaintiff who had obtained a judgment against insured and her son for death of plaintiff's decedent because of negligence of defendant son in operation of car, was not entitled to recover from insurer under renewal automobile insurance policy in garnishment proceedings, where the policy had typed upon it *Restrictive Indorsement* and original policy specifically exculpated insurer from liability for operation of car by the son.

Appeal from Oakland; Moore (Arthur E.), J. Submitted Division 2 May 14, 1965, at Detroit. (Docket No. 357.) Decided September 20, 1965. Leave to appeal granted by Supreme Court December 17, 1965. See 377 Mich 693.

Complaint by L. C. Burch, Jr., administrator of the estate of Clark N. Yost, deceased, for damages under the death act following automobile collision. Judgment for plaintiff. Garnishment issued to Frankenmuth Mutual Insurance Company, and judgment entered against it. Garnishee defendant appeals. Reversed and remanded.

*L. C. Burch, Jr., in propria persona.*

*Sauer & Girard,* for garnishee defendant.

FITZGERALD, J. Irene Wargo owned a 1961 Pontiac Catalina and took out a policy of automobile insurance with the Frankenmuth Mutual Insurance Company, running from December 4, 1961, to June 4, 1962. It contained coverages for bodily injury and property damage, but most important to this case, added to the policy was a document clearly labeled RESTRICTIVE INDORSEMENT, and which read as follows:

"In consideration of the premium set forth in the declaration attached hereto it is expressly agreed between the company and the insured that the company shall not be liable for any loss or damage under any of the various clauses of this policy if the insured automobile is involved in any accident or occurrence arising out of the operation or control of said vehicle by

TOM AMOS WARGO

Also, the undersigned assured herewith agrees that the terms of this indorsement shall remain applicable upon any subsequent renewal or renewals of this policy. This indorsement, however, may be withdrawn from such subsequently renewed policies upon mutual consent of both the insured and the company."

This restrictive indorsement was signed by Irene Wargo and duly executed by an agent of the company and attached to the policy. Tom Amos Wargo was Irene Wargo's minor son.

On June 4, 1962, the expiration date of that policy, Irene Wargo contracted with the company for a policy containing the same bodily injury and property damage limits, but extending her coverage to include medical payments, collision insurance, fire, theft, comprehensive and glass, and road service, with an increased premium which she paid to the company. Printed on this second policy in the ap-

propriate place were the words: "COVERAGE BY IN-
DORSEMENT" and under this was *typed* "RESTRICTIVE
INDORSEMENT." No further reference was made to
the prohibition against Tom Amos Wargo driving
the car.

The rest of the story scarcely needs to be re-
counted. On October 23, 1962, Tom was the opera-
tor of the insured vehicle and was involved in an
accident in Oakland county which led to the death
of Clark N. Yost three days after the accident.

Suit was instituted by the plaintiff-administrator
of the estate of Clark N. Yost for wrongful death,
charging gross negligence of Tom Wargo.

The insurance company refused to defend the suit,
based upon the restrictive indorsement quoted pre-
viously, and private counsel was retained by Irene
and Tom Wargo. After depositions and pretrial,
the matter ended in a consent judgment on July
17, 1964, in the sum of $5,000 against the Wargos,
jointly and severally, in favor of the plaintiff-admin-
istrator.

At this point, plaintiff-administrator is graced
with a judgment and defendants presumptively un-
able to pay, but with the prospect of a garnishee
defendant which may deny its liability but which is
laden with moneys for just the purpose plaintiff
seeks.

At the risk of violating the rule of judicial par-
simony, it must be reiterated that once again Frank-
enmuth Mutual, when garnisheed, denied liability
and declined to pay, pointing out again that in its
view the restrictive indorsement obviated any re-
quirement that it pay anyone anything for the mis-
adventures of Tom Wargo when operating the car
owned by his mother.

The issue of the instant case is whether it was
right or not. The trial judge obviously did not agree

with its position and on October 12, 1964, found that
Frankenmuth Mutual had failed to state a valid
defense against the garnishment* and entered sum-
mary judgment for plaintiff-administrator against
Frankenmuth Mutual for $5,000 and costs of $20.
Frankenmuth appeals this judgment.

. Plaintiff's argument was that the two contracts
of insurance were separate and distinct and had no
relationship one to the other, and since the second
policy was in force at the time of the accident, its
terms governed liability without regard to the pro-
visions of the indorsement attached to the first
policy. Ergo, since the second policy was new and
separate and didn't re-recite the terms of the restric-
tion, that restriction must be disregarded and the
second policy is effective, purged of any defenses
against the minor son driving.

We agree with the trial court that it is not within
its purview to call Irene Wargo and Tom Wargo and
take testimony as to what they intended the effect
of the second policy to be. Neither can we make
any kind of subjective examination as to what was in
the minds of the parties to the contracts.

Viewing the contracts objectively, we can only
come to the conclusion that the typed-in words on
the second policy, "RESTRICTIVE INDORSEMENT" were
an effective bar against liability on the part of the
company.

Counsel for both parties cite two Michigan cases
for the proposition that a renewal of a policy of in-
surance is a new contract, *Brady* v. *Northwestern
Insurance Co.* (1856), 11 Mich 425; *Perkins* v. *Cen-
tury Insurance Company, Ltd.* (1942), 303 Mich 679.
There can be little question that such a rule has
been adopted, but it is not entirely clear from the

---

* Frankenmuth's conduct here suggests no possibility of estoppel
under the rule developed in the recent case of *Meirthew* v. *Last* (1965),
376 Mich 33.

above cases just what is to be inferred from the term "new contract." The answer to this inquiry can be found in 13 Appleman, Insurance, § 7648, where the author addresses himself specifically to such language. He first notes that: "A renewal contract has been stated by many jurisdictions to be a new, and a separate and distinct contract, unless the intention of the parties is shown clearly that the original and renewal agreements shall constitute one continuous contract." Michigan is considered by the author as one of the States described by the above statement, *Brady* being one of the Michigan cases cited.

In explaining what is meant by a "new, and a separate and distinct contract" the author continues as follows:

"It has thus been stated to be a new or separate contract which is based upon and subject to the terms and conditions as were contained in the original policy. Unless otherwise provided, the rights of the parties are controlled by the terms of the original contract, and *the insured is entitled to assume, unless he has notice to the contrary, that the terms of the renewal policy are the same as those of the original contract.*" (Emphasis supplied.)

In support of this interpretation, Appleman cites *Aurora Fire & Marine Insurance Co.* v. *Kranich* (1877), 36 Mich 289. The Michigan Supreme Court states therein (p 295):

"The renewals, although amounting to a new contract, in no way changed the terms and conditions of the policy, except as they continued it in force. The rights of both parties, no matter how often a policy of insurance may have been renewed, are still bound by the provisions of the policy as originally issued. Its terms are neither enlarged, restricted or changed."

Our case at bar is not entirely governed by the foregoing somewhat pedantic and attenuated discussion of renewal. We find the result of the trial court's decision not unpalatable, but it overlooks what to us is basic law, narrowly circumscribing the rights of the administrator in this case and which forms the basis for our decision: that garnishment is an extraordinary remedy that does not permit recovery unless all proper ingredients are present.

There is no quarrel with the validity of the original judgment in this case and it is good against codefendants Irene and Tom Wargo. We cannot stretch the long recognized concepts of garnishment to grant a greater right to a stranger to an insurance contract than is conferred upon the insured.

Let us examine some universal concepts of garnishment:

The test of the liability of a garnishee is whether the principal defendant could have maintained an action against the garnishee and recovered as of the time of the service of the writ of garnishment. 13 MLP, Garnishment, § 11.

It is not necessary to construe, rewrite, conjecture, or take testimony as to the rights of Irene Wargo against Frankenmuth. The policies speak for themselves and no kind of extrinsic evidence is needed to define the relationship of Mrs. Wargo and her insurance company.

The rule that the right to garnishment is dependent on the existence of a cause of action by the principal defendant against the garnishee is applicable to garnishment actions based on claims under an insurance policy. 13 MLP, Garnishment, § 12.

The matter before us is stated succinctly in 38 CJS, Garnishment, § 26, in which it says, "The most comprehensive test of liability to garnishee process is

whether or not the person sought to be charged could have been sued by the defendant."

If this be the test, and it clearly appears to be, Frankenmuth is not liable. Garnishment, when analogized with this case, places plaintiff Burch in the shoes of Irene Wargo against Frankenmuth, and asks the question, "Could she recover against the insurer?" To answer "yes", would be to rewrite a contract which is clear on its face and to grant to Burch a greater right than that of Irene Wargo. Consequently, we say "no".

In a recent Michigan case, *Poelman* v. *Payne* (1952), 332 Mich 597, 600, which likewise dealt with garnishment of an automobile insurance company, the Court stated, "In garnishment proceedings it is elementary that the plaintiff cannot recover against the garnishee defendant except in cases wherein the principal defendant could recover against the garnishee defendant. *Allor* v. *Dubay* (1947), 317 Mich 281."

We cannot confer rights upon plaintiff which he does not have from a clear reading of the contracts of insurance. Likewise, he still has his valid judgment against Irene and Tom Wargo. It is to them he must look for satisfaction and not to an insurance company which in the free and open market, dealing with its insured, had exculpated itself from liability for the very thing that happened.

Other points raised on appeal, though examined closely, fall like dominos when viewed in the light of the foregoing observations.

Judgment reversed. Remanded for proceedings in accord with this opinion. Costs to appellee.

Quinn, P. J., concurred with Fitzgerald, J.

T. G. Kavanagh, J., concurred in result.