## BURCH v. WARGO.

1. CONTRACTS—INSURANCE—RESTRICTIVE INDORSEMENT—RENEWAL—STATUTE—PUBLIC POLICY.

    Defendant insured and garnishee defendant casualty insurance company were free to contract that a restrictive indorsement, excluding coverage when defendant's automobile was operated by defendant's minor son, would, until "withdrawn", carry over and become part of any renewals of the policy, unless some provision of statute or rule of public policy has ordained otherwise.

2. SAME—INSURANCE.

    A policy of insurance is much the same as any other contract, an agreement by the parties, and courts will determine what that agreement was and enforce it accordingly.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 7 Am Jur 2d, Automobile Insurance § 131.
[2, 4] 7 Am Jur 2d, Automobile Insurance § 2; 29 Am Jur, Insurance §§ 183, 184.
[3] 7 Am Jur 2d, Automobile Insurance § 7.
[5] 7 Am Jur 2d, Automobile Insurance § 2; 29 Am Jur, Insurance §§ 183, 184; 41 Am Jur, Pleading §§ 340–343.

3. SAME—INSURANCE—FINANCIAL RESPONSIBILITY ACT.

Provision of vehicle code which requires that the motor vehicle liability insurance policy, the written application therefor, and any rider or indorsement, shall constitute the entire contract between the parties applies only when "proof of financial responsibility for the future" is statutorily required (CLS 1961, § 257.520).

4. SAME—STATUTES—CASUALTY INSURANCE.

Defendant's insurance contract is governed by that portion of the insurance code dealing with casualty insurance contracts, which contains no "entire contract between the parties" clause, and it is *held*, that the defendant and the insurer were left free by the insurance code to contract as they did, allowing restrictive indorsement to be in force as to any renewals of the insurance policy, where the code in at least 8 specific occasions requires such a clause (CLS 1961, § 500.100 *et seq.*).

5. INSURANCE—CONTRACT—MOTION FOR SUMMARY JUDGMENT—RENEWAL OF POLICY.

Plaintiff's motion for summary judgment based upon contention that defendant's insurance policy with the garnishee defendant insurance company was not a renewal of earlier policy which contained a restrictive indorsement applicable to renewals *held*, properly granted, where the garnishee, prima facie liable for payment of the judgment against the principal defendant, failed to meet plaintiff's motion with proof by affidavit of fact or produced document that the later policy was a "renewal" of earlier policy (GCR 1963, 117).

Appeal from Court of Appeals, Division 2; Quinn, P. J., and T. G. Kavanagh, and Fitzgerald, JJ., reversing Oakland, Moore (Arthur E.), J. Submitted June 9, 1966. (Calendar No. 8, Docket No. 51,329.) Decided August 24, 1966.

1 Mich App 365, reversed.

Complaint by L. C. Burch, Jr., administrator of the estate of Clark N. Yost, deceased, for damages under the death act following automobile collision. Judgment for plaintiff. Garnishment issued to Frankenmuth Mutual Insurance Company, and

judgment entered against it. Judgment reversed by Court of Appeals. Plaintiff appeals. Reversed. Judgment of trial court affirmed.

*L. C. Burch, Jr., in propria persona.*

*Sauer & Girard,* for garnishee defendant.

PER CURIAM. See *Burch* v. *Wargo,* 1 Mich App 365. Upon leave granted the plaintiff administrator reviews determination by the Court of Appeals that the "Restrictive Indorsement" of the first policy excluded liability of the garnishee for payment of the judgment entered in the principal suit.[1]

The indorsement on its face is free from ambiguity or doubt.[2] The consequential question is whether the insurer and the insured agreed *with pertinent effectiveness* that "the terms of this indorsement shall remain applicable upon any subsequent renewal or renewals of this policy." Preliminary to review of this question it is noted (a) that no contention is made that the indorsement was "with-

[1] We shall refer to the policy expiring June 4, 1962, as the "first policy." The policy in effect when plaintiff's cause accrued will be identified as the "second policy." The cause accrued October 23, 1962.

[2] For convenience of the reader the critical wording of the indorsement, which indorsement was signed by the insured, countersigned by the insurer and added to the first policy a little over a month after its date, is requoted here:

"RESTRICTIVE INDORSEMENT Effective Date January 15, 1962

In consideration of the premium set forth in the declaration attached hereto it is expressly agreed between the company and the insured that the company shall not be liable for any loss or damage under any of the various clauses of this policy if the insured automobile is involved in any accident or occurrence arising out of the operation or control of said vehicle by

TOM AMOS WARGO

Also, the undersigned assured herewith agrees that the terms of this indorsement shall remain applicable upon any subsequent renewal or renewals of this policy. This indorsement, however, may be withdrawn from such subsequently renewed policies upon mutual consent of both the insured and the company."

drawn" upon "mutual consent" prior to the time
plaintiff's cause against the principal defendant
arose, and (b) that plaintiff does not claim—aside
from reliance upon presently considered section 520
of the vehicle code—that the carry-over clause of
the indorsement was invalid. (For a discussion and
citation of authorities concerned generally with this
question, see annotation headed "Motor vehicle in-
surance: exclusionary provision relating to age of
operator"; 83 ALR2d 1236.)

The closely analogous principles laid down in *Eg-
hotz* v. *Creech,* 365 Mich 527 are fully applicable
here. Unless some provision of statute or known
rule of public policy has ordained otherwise, the
parties were entitled to and did validly contract
that the exclusion of coverage, when the designated
minor son was driving the insured automobile, would
until "withdrawn" carry over and become a part
of any identifiable-as-such "renewal or renewals of
this policy."

In *Eghotz* the question was whether specific provi-
sions appearing in an automobile liability policy,
for automatic suspension of coverage for nonpay-
ment of premium, prevailed over claim that section
3020 of the insurance code (CLS 1961, § 500.3020
[Stat Ann 1957 Rev § 24.13020]) required written
notice of cancellation as a condition of such suspen-
sion. Holding that they did, the Court provided an
appropriate introduction to analysis of our stated
question:

"If the provisions of the statute exclude any other
method for the cancellation or suspension of a casu-
alty insurance policy, the trial court was in error.
If the provisions of the statute do not exclude a
time-payment indorsement, then the decision of the
trial judge was correct.

"The early Michigan cases laid down the proposi-
tion that a policy of insurance is much the same as

any other contract. It is a matter of agreement by the parties. The courts will determine what that agreement was and enforce it accordingly." (p 530)

From this generally settled observation we turn to plaintiff's reliance upon that part of said section 520 which reads (CLS 1961, § 257.520 [Stat Ann 1960 Rev § 9.2220]):

"5. The policy, the written application therefor, if any, and any rider or indorsement which does not conflict with the provisions of this chapter, shall constitute the entire contract between the parties."

The trouble with plaintiff's contention is that it is factually misplaced. That, which in section 520 the legislature referred to as "this chapter," is chapter 5 of the vehicle code of 1949 (Act No 300). The chapter is headed "financial responsibility act."[3] Its terms applicable to liability insurance refer only to policies furnished pursuant to that chapter; whereas the first and second Wargo policies were contracted for and issued, not by force of any statutorily coerced "proof of financial responsibility" but by the right of free contract limited only by the insurance code of 1956, as amended. To be precise, said section 520 applies only when "proof of financial responsibility for the future" (see heading which immediately precedes sections 511 through 528 of the vehicle code) is statutorily required, a situation not presently before the Court.

The point is governed by the insurance code (CLS 1961, § 500.100 *et seq.* [Stat Ann 1957 Rev § 24.1100 *et seq.*]). There, corresponding with *Eghotz,* no provision appears which in any way limited the right of Frankenmuth and Mrs. Wargo to contract as they

---

[3] The quoted provision appeared in the original financial responsibility act as PA 1933, No 203, § 14 second subd (b). It was enacted intact as a part of said chapter 5. The only exception was the substitution of "chapter" for "act."

did by indorsement and agreed carry-over of such indorsement. We proceed:

It is significant that the legislature, on at least eight specific occasions appearing in the insurance code, chose to require an "entire contract between the parties" clause. Such specific occasions were section 2226 (life insurance); section 3407 (disability insurance); section 3608 (group disability insurance); section 3640 (blanket disability insurance); sections 4004 and 4014 (life and annuity contracts); section 4210 (industrial life insurance) and section 4434 (group life insurance). But when the reader comes to chapter 30 of the code (CLS 1961, § 500.3004 *et seq.* [Stat Ann 1957 Rev § 24.13004 *et seq.*]), dealing with casualty insurance contracts, he finds no such requirement. This is a clear instance then, for application of the rule *exclusio*.[4] As in *Eghotz*, Mrs. Wargo and the insurer were left by the insurance code free to contract as was done by the quoted restrictive indorsement. That contract is not shown as having been contrary to Michigan's public policy as same stood prior to the legislative session of 1965.[5]

Having decided that the indorsement was valid as against plaintiff's reliance upon the quoted portion of said section 520, an important feature of the stated question remains for answer. The garnishee asserted and the trial judge denied that the second policy was a "renewal" within meaning and purpose

[4] For discussion of the rule and applicability thereof, see *Sebewaing Industries, Inc.,* v. *Village of Sebewaing,* 337 Mich 530, 544–548.

[5] We do not intimate either way that the aggregate effect of PA 1965, No 198 (CL 1948, § 257.1101 *et seq.* [Stat Ann 1965 Cum Supp § 9.2801 *et seq.*]); PA 1965, No 388, amending CLS 1961, § 500-.3010 (Stat Ann 1968 Cum Supp § 24.13010); and PA 1965, No 389, amending CL 1948, §§ 257.1103, 257.1106, 257.1107, 257.1112, 257.1113, 257.1119, 257.1122, 257.1123 (Stat Ann 1966 Current Material, p 6, §§ 9.2803, 9.2806, and Stat Ann 1968 Cum Supp §§ 9.2807, 9.2812, 9.2813, 9.2819, 9.2822, 9.2823), may have changed such policy. That question is for another case.

of the aforesaid indorsement. The issue thus recorded has prompted a series of questions which, through our clerk, were propounded for answer by counsel shortly after oral argument of the case. The questions:

"(a) What proof by affidavit or document was before the trial judge on the basis of which it may be ruled summarily that the second policy was (or was not) a 'subsequent renewal' of the first policy?

"(b) May the Court safely assume that Mrs. Wargo did not apply in writing for the second policy? If there was such an application, would it not likely disclose that the policy to be issued would (or would not) constitute a 'subsequent renewal' within contemplation of the indorsement?

"(c) Is it claimed by the insurer that the words 'restrictive indorsement,' typed as they are into the second policy, are sufficient to render the second policy a 'subsequent renewal' of the first policy?

"(d) Generally, what of *present* record will justify *present* determination that the second policy was (or was not) a 'subsequent renewal'?

"(e) Finally, do counsel agree that the foregoing questions are ready for determination on the record made before Judge Moore, pursuant to GCR 1963, 117? (Note in such connection Mr. Girard's repeated contention that the record presents fact issues, 35a, 38a, 47a)."

The respective answers of counsel are agreeable in one respect, that is, they have stipulated that there are "no material issues of fact to be determined." The result is that the case is due now for summary judgment upon a record presenting three conclusions of controlling force.

The first is that the garnishee was shown by plaintiff's motion for summary judgment as having been *prima facie* liable for payment of the judgment entered in the principal suit. This follows since the

second policy contains no relevant restriction of liability and no words indicative of intent that the second policy was or would constitute a "renewal" of the first.

The second is that the garnishee bore and yet bears the burden of establishing its affirmative defense; that of no liability on account of legal effectiveness—as against plaintiff's judgment in the principal suit—of the restrictive indorsement.

The third is that the garnishee has failed to establish, or to offer proof of the fact, that the second policy was a "renewal" of the first policy.

*To conclude:* There being no application by Mrs. Wargo for the second policy, in writing or otherwise so far as we are advised, and no words in the second policy showing or tending to show that it was a "renewal" of the first rather than a new and distinct policy, and the terms of coverage and amount of aggregate premium as between the two policies being somewhat variant, we are obliged to hold that the garnishee has failed to meet plaintiff's motion for summary judgment with proof by affidavit of fact or produced document that the second policy was a "renewal" of the first.

The result effected by the record made in circuit,[6] supplemented by the aforesaid declarations of counsel that there are no issues of fact to be determined, is the same as if the issue had gone to trial upon that record with neither party submitting proof over and above the affidavits for and against summary judgment. The case having reached this Court in that agreed posture, we accept the record accordingly and determine for foregoing reasons that the

[6] The practice called for by GCR 1963, 738 was not pursued below. After filing of the garnishee's disclosure, wherein liability was denied, no interrogatories were served and no demand for oral examination of the garnishee was made. Instead, summary judgment was sought immediately under GCR 1963, 117.

garnishee has failed to sustain the defense it has asserted and that the circuit judge was right in entering judgment against the garnishee.

The judgment of the Court of Appeals is reversed. That court will enter a judgment affirming the judgment of the circuit court. Costs of all courts to plaintiff.

T. M. Kavanagh, C. J., and Dethmers, Kelly, Black, Souris, Smith, O'Hara, and Adams, JJ., concurred.