PROGRESSIVE MUTUAL INSURANCE COMPANY *v.* TAYLOR

1. INSURANCE—REFORMATION—MUTUAL MISTAKE—BURDEN OF PROOF.
   An insurance company must prove a mutual mistake between the parties to an automobile liability insurance policy by clear and convincing evidence to obtain its reformation.

2. INSURANCE—REFORMATION—EVIDENCE—ADMISSIBILITY.
   Evidence showing the intent of the parties to an automobile insurance policy which is the object of a reformation action is admissible to enable the court to determine the real terms of the contract.

3. INSURANCE—REFORMATION—CONTRACTS—ENDORSEMENT OF EXCLUSION FROM COVERAGE.
   Factors to consider in an action by an insurer for reformation of an automobile insurance contract to include an endorsement of exclusion from coverage include whether prior policies between the parties included that endorsement, whether the parties intended to change their basic agreement where prior policies included the endorsement, whether the insurer intended to waive the endorsement, whether the insured sought protection for the risk excluded by the endorsement, and whether the premium

REFERENCES FOR POINTS IN HEADNOTES
[1-10]  43 Am Jur 2d, Insurance §§ 356–378.
    45 Am Jur, Reformation of Instruments § 24.
[11]  43 Am Jur 2d, Insurance § 58.

payable under the contract reflects an inclusion of that endorsement; the insurer's fault in leaving out the endorsement is not a bar to reformation.

4. INSURANCE—REFORMATION—AUTOMOBILE INSURANCE—EXCLUSION CLAUSE.

Reformation of an automobile liability insurance policy at the request of the insurer to include an endorsement excluding from coverage the son of the insured was proper where previous policies between the parties included that endorsement, there was no evidence indicating that the parties intended to alter their basic agreement, the insured admitted having no intention of specifically insuring her son, the premium paid under the policy contemplated no coverage for male drivers under 25, the insured's son was under 25, and there was a conspicuous notice to the insured that the premium paid contemplated the exclusion of male drivers under 25.

5. INSURANCE — AUTOMOBILE INSURANCE — REFORMATION — COPY TO INSURED — STATUTES.

The statute requiring that no automobile liability insurance policy shall be issued unless the policy, or an exact copy, is delivered to the insured is not an "entire contract" provision making the policy the entire contract between the parties, has no effect on equitable remedies regarding those policies, and does not bar reformation of the contract at the request of the insurer to correct an error caused by mutual mistake (MCLA § 500.2248).

6. INSURANCE—AUTOMOBILE INSURANCE—REFORMATION—STATUTES.

The statute requiring that the premium and amount of coverage must be stated in an automobile liability insurance policy does not bar reformation of the insurance contract to add an endorsement excluding from coverage the son of the insured where failure to include that endorsement was caused by mutual mistake, because the reformation sought concerns who is insured, not how much insurance the insured has (MCLA § 500.2228).

7. INSURANCE — AUTOMOBILE INSURANCE — REFORMATION — FINANCIAL RESPONSIBILITY ACT—"ENTIRE CONTRACT" CLAUSE.

The "entire contract" clause of the financial responsibility act applies only to policies issued pursuant to the financial responsibility act and does not prevent reformation of an automobile liability insurance policy not issued pursuant to it (MCLA § 257.520).

8. INSURANCE — AUTOMOBILE INSURANCE — "ENTIRE CONTRACT"
CLAUSES — STATUTES.

The Insurance Code of 1956 does not have an "entire contract"
clause applying to a policy of automobile liability insurance
and none may be read into such a policy.

9. INSURANCE—AUTOMOBILE INSURANCE—REFORMATION—EXCLUSION
FROM COVERAGE—PUBLIC POLICY.

Public policy does not bar the reformation of an automobile
liability insurance policy to include an endorsement excluding
from coverage the son of the insured where failure to include
the endorsement was caused by mutual mistake.

10. INSURANCE — AUTOMOBILE INSURANCE — REFORMATION — EN-
DORSEMENT — APPROVAL OF COMMISSIONER — STATUTES.

Failure of the insurer to comply with the statutory requirement
that forms of insurance policies must be approved prior to
issuance of a policy does not bar reformation of an insurance
policy to include an endorsement which was not approved prior
to issuance but was later approved; the statute governing
that requirement establishes only a penalty of a fine and does
not render the endorsement void, only voidable (MCLA § 500-
.2236).

11. INSURANCE—PUBLIC POLICY—APPROVAL OF COMMISSIONER.

Approval by the Insurance Commissioner of an insurance policy
or endorsement form is some persuasion that the policy or
endorsement complies with public policy.

Appeal from Oakland, Clark J. Adams, J.  Sub-
mitted Division 2 June 9, 1971, at Lansing.  (Docket
No. 9295).  Decided August 30, 1971.

Complaint by Progressive Mutual Insurance Com-
pany against Thomas Lee Taylor and others for a
declaratory judgment of no liability on an insurance
policy.  The Secretary of State was allowed to in-
tervene as a party defendant on behalf of the Motor
Vehicle Accident Claims Fund.  Judgment for plain-
tiff.  Intervening defendant appeals.  Affirmed.

*Plunkett, Cooney, Rutt & Peacock* (by *D. J. Wat-
ters*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bilitzke* and *Carl K. Carlsen,* Assistant Attorneys General, for intervening defendant Secretary of State.

Before: Danhof, P. J., and Bronson and O'Hara,* JJ.

Bronson, J. Plaintiff insurance company filed suit for a declaratory judgment in Oakland County Circuit Court on September 13, 1966. The company requested a declaration of no liability on its policy 6Q 440005 issued to defendant Mary Ella Newcomb. The then Secretary of State, James M. Hare, intervened as a party defendant on behalf of the Motor Vehicle Accident Claims Fund. A declaratory judgment was granted after a four-day nonjury trial. This Court granted delayed leave to appeal to the intervening defendant on August 12, 1970.

The accident giving rise to this controversy occurred on January 22, 1966, while defendant Rowland Gowdy, Mrs. Newcomb's son, was driving. The accident resulted in fatal injuries to Phyllis Taylor and injured the other members of the Taylor family.

Plaintiff insurance company seeks reformation of its policy 6Q 440005 on grounds of mutual mistake to exclude Gowdy from coverage. Mrs. Newcomb first obtained automobile insurance from the plaintiff in May, 1963, through a local agency. The plaintiff's general agent requested endorsements excluding Mrs. Newcomb's husband and male drivers under 25 from coverage. There is some dispute as to whether the latter was issued by mistake in response to a request for the former or was issued inten-

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tionally.  Mrs. Newcomb did testify, though, that she understood her son was not covered by the policy.  In May, 1964, a second policy was issued to Mrs. Newcomb.  It contained the same endorsements as the 1963 policy.  In June, 1964, Rowland drove the car without consent and was involved in an accident.  The plaintiff paid no damages for that incident.  Rowland did not reside at home between August, 1964, and September, 1965.

Mrs. Newcomb applied for a third policy in May, 1965.  At that time, she requested that her daughter be included on the policy.  There was no discussion of any other possible drivers.  Plaintiff had a new general agent who had no record of prior endorsements.  A routine check of this application by an employee of plaintiff did not result in a request for endorsements.  The policy in question was then issued.  An orange sticker was placed on the policy indicating the premium paid contemplated the exclusion of male drivers under 25.

To obtain reformation,[1] plaintiff must prove by clear and convincing evidence a mutual and common mistake by both parties.  *Rupe* v. *Cingros* (1967), 7 Mich App 146, 152; *Dykstra* v. *Huizinga* (1961), 362 Mich 420, 424.  A unilateral mistake by one of the parties is not sufficient to warrant reformation. *Emery* v. *Clark* (1942), 303 Mich 461.  This standard of proof is particularly appropriate in a case where the party asserting the mistake prepared and

---

[1] *Burch* v. *Wargo* (1966), 378 Mich 200, does not prohibit evidence as to the parties' intent in the instant case.  *Burch* involved facts similar to the instant case.  The cause of action was to garnish the insurer following a consent judgment against the insured.  The Supreme Court held that the evidence was not sufficient to find that the original policy had merely been renewed.  The policy in question had to stand by itself in determining the insured's liability.  In the instant case, the insurer admits that the policy in question must stand by itself.  The plaintiff's argument is that the policy does not state the contract the parties entered into.  Evidence on this question is admissible in a reformation suit.

approved the contract with professional advice. *Goldberg* v. *Cities Service Oil Co.* (1936), 275 Mich 199, 211, citing *Long* v. *Bibbler* (1923), 225 Mich 261, 263.

The cases based on an insurer's request for reformation go each way and involve varied fact situations. The cases of *Fred Meyer, Inc.* v. *Central Mutual Insurance Co.* (D Or, 1964), 235 F Supp 540, and *Royal Insurance Co.* v. *Morgantown* (ND W Va, 1951), 98 F Supp 609, are particularly helpful. *Fred Meyer, Inc.* dealt with exclusions in special risk policies. Reformation was granted. The key factors were: (1) prior policies had the exclusions in question and (2) the insurance company did not intend to waive the exclusions. The fact that the company was at fault in leaving out the exclusions did not bar it from relief. *Royal Insurance Co.* v. *Morgantown, supra,* denied reformation of a policy which, on its face, covered fire and lightning rather than the alleged intended coverage for windstorm. The issued policy was checked by the insurer in a manner similar to the check of renewals employed by Progressive Mutual. *Royal Insurance Co.* is distinguishable, however. The court found that the insured had sought protection against the risk covered. The mistake involved was therefore unilateral.

In the case at bar, there is no evidence indicating that the parties intended to alter their basic agreement of prior years. In May, 1965, Mrs. Newcomb had no intention of specifically insuring Rowland on her policy. She had no reason to as Rowland was not living at home. It is not clear from the record why Progressive did not issue the exclusion. These facts fall within the rationale of *Fred Meyer, Inc., supra.*

Another factor weighing in the company's favor is the premium paid. As indicated by the orange

sticker on the policy, it contemplated no coverage for male drivers under 25. The premium paid covered the risk to Progressive of driving by Mrs. Newcomb and her daughter. There was conspicuous notice to Mrs. Newcomb to that effect. The premium paid was the deciding factor in *United States Fidelity & Guaranty Co.* v. *Beckman* (1936), 278 Mich 516. It has a similar effect here. The trial judge's finding was not so clearly erroneous as to require reversal on this issue.

The intervening defendant next raises two public policy arguments which he says preclude reformation in favor of Progressive Mutual.

The first argument is that MCLA § 500.2248 (Stat Ann 1957 Rev § 24.12248) prevents the reformation of automobile insurance policies by making the policy the entire contract between the parties. The statute provides:

"Sec. 2248. No policy of insurance against fire, theft, property damage, collision, and/or liability in connection with automobile coverage shall be issued unless the policy, or an exact copy thereof, be delivered to the insured."

The statute's obvious purpose is to require insurance companies to give copies of policies to insureds. It has nothing to do with equitable remedies regarding such policies. The Secretary's reliance on MCLA § 500.2228 (Stat Ann 1957 Rev § 24.12228) does not bolster his argument. That section states that the premium and *amount* of coverage must be stated in the policy. The question in the instant case is who is insured, not how much insurance does the insured have. Other mandatory automobile policy provisions are set forth in MCLA § 500.3004 *et seq.* (Stat Ann 1957 Rev § 24.13004 *et seq.*). Those sections contain no "entire contract" clause requirements either.

The Supreme Court faced a similar argument in *Burch* v. *Wargo* (1966), 378 Mich 200. The facts in *Burch* were similar to those here except that the endorsement was specific. The plaintiffs argued that the "entire contract" clause of the financial responsibility act, CLS 1961, § 257.520 (Stat Ann 1960 Rev § 9.2220) barred reformation. The Court held that this clause applied only to policies issued pursuant to the financial responsibility act, MCLA § 257.501 *et seq.* (Stat Ann 1968 Rev § 9.2201 *et seq.*). The governing statute was the Insurance Code of 1956 (MCLA § 500.100 *et seq.* [Stat Ann 1957 Rev § 24.1100 *et seq.*]), which has eight "entire contract" clauses. None apply to automobile liability insurance. The *Burch* Court applied the rule *exclusio* and held that such a clause could not be read into a policy if the legislature had not done so by statute. That Court also held that the contract, as it existed, did not contravene public policy. Public policy does not prevent any reformation of an insurance policy. That would be the result if this Court accepted the Secretary's argument. MCLA §§ 500.2248 and 500-.2228 do not in and of themselves bar reformation. Reformation will only be denied where the reform requested is contrary to public policy. The public policy applicable to the endorsement in question is the same as that discussed in *Burch*.[2] Public policy has not been breached.

The Secretary's second policy argument is that Progressive Mutual's failure to have this endorse-

---

[2] The question of whether a different result would occur under the Motor Vehicle Accident Claims Act of 1965, MCLA § 257.1101 *et seq.* (Stat Ann 1968 Rev § 9.2801 *et seq.*) was reserved in *Burch* for another case. That act does not apply to the policy in question since it was entered into prior to the November 1, 1965 effective date of the statute. Statutes are given prospective effect in Michigan unless a contrary intent is shown. Statutes with a future effective date operate from that date. *Weaver* v. *Haney* (1971), 32 Mich App 424.

ment approved by the Insurance Commissioner (MCLA § 500.2236 [Stat Ann 1970 Cum Supp § 24-.12236]) prior to using it, makes it void. Progressive argues that lack of approval only makes the endorsement voidable. The statute in question provides, in part:

"(1) No basic insurance policy form or annuity contract form shall be issued or delivered to any person in this state, and no application form where a written application is required and is to be made a part of such policy or contract, no printed rider or indorsement form or form of renewal certificate, and no group certificate in connection with any such policy or contract, shall be issued or delivered to any person in this state, until a copy of the form thereof is filed with the department of insurance and approved by the commissioner as conforming with the requirements of this code and not inconsistent with the law.   *   *   *

"(2) Upon written notice to the insurer, the commissioner may disapprove, withdraw approval, or prohibit the issuance, advertising or delivery of any such form to any person in this state if it violates any provisions of this code, or contains inconsistent, ambiguous or misleading clauses, or contains exceptions and conditions that unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the policy.   *   *   *

*   *   *

"(4) Any issuance, use or delivery by an insurer of any such form without the prior approval of the commissioner as required by subsection (1) or after withdrawal of approval as provided by subsection (2) constitutes a separate violation for which the commissioner may order the imposition of a civil penalty of $25.00 for each offense, but not to exceed the maximum penalty of $500.00 for any one series of offenses relating to any one basic policy form,

which penalty may be recovered by the attorney general as provided in section 230."

Three cases relied on by the Secretary do not support him. They indicate only that clauses which contravene a statutorily expressed policy (*Commercial Union Assurance Co.* v. *Preston* [1926], 115 Tex 351 [282 SW 563]; *Ottens* v. *Atlas Assurance Co.* [1937], 226 Wis 596 [275 NW 900]) or which are issued despite disapproval (*Linkens* v. *Furman* [1964], 52 Ill App 2d 1 [201 NE2d 645]) will not be upheld. *American Employers Insurance Co.* v. *Worden* (1942), 92 NH 249 (29 A2d 417), and *Continental Casualty Co.* v. *Buxton* (1937), 88 NH 447 (191 A 1), are not helpful. They do hold that unapproved forms are void, but the statute involved is different than ours.

*Traveler's Insurance Co.* v. *Chicago Bridge & Iron Co.* (Tex Civ App, 1969), 442 SW2d 888, also holds an unapproved endorsement void. The purpose of the Texas statute is premium approval rather than form approval. The Michigan statute requires form approval to protect the public from clauses which mislead, deceive or unreasonably deny coverage granted in general provisions. The only penalty for unauthorized use is a fine. Other chapters of the Insurance Code make clauses which violate mandatory provisions void, *i.e.*, fire insurance (§ 2860); auto insurance (section 3012). There is no such penalty in § 2236. We, therefore, hold that the late approval only makes the endorsement voidable.

By holding that an unauthorized endorsement is voidable we do not bless deliberate noncompliance with our laws. The insurance company must still pay the statutory fine and subject the clause to judicial scrutiny. A late filing does not prejudice an insured. An insured is prejudiced by the use of an endorsement contravening public policy. That could

happen even with prior approval. Further, this does not put Progressive Mutual in violation of the statute. The late filing did that. This Court would put Progressive in violation of the Code only if it approved an unconscionable endorsement.

The approval by the Insurance Commissioner of this and similar endorsements is some persuasion that the endorsement complies with public policy. *Drogula* v. *Federal Life Insurance Co.* (1929), 248 Mich 645. There is nothing in the record to persuade us otherwise.

Reformation to exclude Rowland Gowdy is allowed.

Affirmed.

All concurred.