375 So.2d 598 (1979)
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellant,
v.
Inez SHEFFIELD, Appellee.
Nos. 78-1765, 78-1771.
District Court of Appeal of Florida, Third District.
October 2, 1979.
Talburt, Kubicki & Bradley and Betsy E. Hartley, Miami, for appellant.
Horton, Perse & Ginsberg and Edward A. Perse, Brumer, Cohen, Logan, Kandell & Redlus, Miami, for appellee.
Before PEARSON, HENDRY and SCHWARTZ, JJ.
SCHWARTZ, Judge.
The defendant insurance company appeals from a summary declaratory judgment holding that it was required to provide uninsured motorist protection to its insured, who was the plaintiff below and is the appellee here. The sole issue is whether a policy issued by Hartford to Ms. Sheffield which contained lower liability limits than a preceding one, as to which UM coverage had been specifically rejected, was a "renewal" of the initial policy so that a second rejection was not required under Section *599 627.727(1), Florida Statutes (1976).[1] The trial court held that the second policy was not a renewal policy, and that UM coverage was deemed automatically provided in the new policy because of the absence of the thus-required second rejection. We agree and affirm.
The facts are entirely undisputed and serve to raise what is only an issue of law which was properly resolved below by summary adjudication. On December 1, 1975, Hartford issued Ms. Sheffield an automobile liability insurance policy for a one year term with the then-required $15,000/$30,000 minimum limits. At that time, she executed a specific written rejection of UM coverage as provided by Section 627.727(1), and no UM protection was in fact provided or paid for. Toward the end of the policy period, Ms. Sheffield called the Hartford agent with the complaint that her premium was too high. The agent replied that the premium could be reduced in the light of the legislature's intervening lowering of the minimum limits to $10,000/$20,000. Ms. Sheffield agreed. In response to the company's request, she executed a "policy change request" [e.s.] for the lower limits. The company then issued an "amended declarations" sheet for the policy period from December 1, 1976 to December 1, 1977 which stated the "reason for amendment" as a "liability coverages change." Ms. Sheffield was not again offered, and did not again reject UM coverage in connection with the issuance of the second policy. On July 25, 1977, she was involved in an accident with an uninsured motorist. After Hartford denied her UM coverage, she filed an action against the company which culminated in the summary judgment in her favor now under review.
The controlling statute, Section 627.727(1), Florida Statutes (1977) provides
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section shall not be applicable when or to the extent that, any insured named in the policy shall reject the coverage... . Unless the named insured, or lessee having the privilege of rejecting uninsured motorist coverage, requests such coverage in writing, the coverage need not be provided in or supplemental to a renewal policy when the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer. [e.s.]
It is well-settled in our jurisdiction and elsewhere that this provision must be construed so as to effectuate, if possible, the broad public policy in favor of providing uninsured motorist protection. Mullis v. State Farm Mutual Automobile Ins. Co., 252 So.2d 229 (Fla. 1971); Hodges v. National Union Indemnity Co., 249 So.2d 679, 680 (Fla. 1971). Such a construction requires that the statutory exceptions to the coverage requirement  including the lack of necessity for a specific rejection when a "renewal policy" is involved  must be interpreted very strictly against their applicability. In Weathers v. Mission Ins. Co., 258 So.2d 277, 279 (Fla. 3d DCA 1972), this court held:
"The statute evolves from public policy considerations and must be broadly and liberally construed to accomplish this purpose. Conversely, that portion of the statute permitting rejection of uninsured motorist coverage detracts from the public policy considerations and must therefore be narrowly and strictly construed."
Accord: e.g., Guarantee Ins. Co. of Texas v. Boggs, 527 S.W.2d 265, 269 (Tex.Civ.App. 1975). ("Proper construction of the statute *600 would apply the exception [identical to renewal proviso involved here] sparingly.")
Applying these rules of construction to the situation involved in this case, it is clear that the second, or, as indicated by the company forms themselves, the "changed" or "amended" policy may not properly be deemed a "renewal policy" within the meaning of Section 627.727(1). The succeeding policy differed from the earlier insurance contract in two very significant respects  the consideration, that is, the premium, and the protection provided by the limits of liability were both substantially lower. Thus the second contract does not fall within the widely accepted definition of a "renewal" insurance policy as one which "is based upon and subject to the same terms and conditions as were contained in the original policy." [e.s.] 13A Appleman, Insurance Law and Practice § 7648 (1976). As was said in Long Bros. Grocery Co. v. United States Fidelity & Guaranty Co., 130 Mo. App. 421, 110 S.W. 31 (1908):
The rule is generally recognized that: `A renewal of a policy constitutes a separate and distinct contract for the period of time covered by such renewal. It is, however, a contract with the same terms and conditions as is evidenced by the bond which is renewed, because the renewal receipt recites that it is renewed in accordance with the terms of the bond.' De Jernett v. Fidelity & Casualty Co. of N.Y., 98 Ky. 558, 33 S.W. 828; Florida R.R. Co. v. American Surety Co., 99 F. 674, 41 C.C.A. 45; Insurance Co. v. Walsh, 54 Ill. 164, 5 Am.Rep. 115; Brady v. Insurance Co., 11 Mich. 425. [e.s.]
Accord: Burch v. Wargo, 378 Mich. 200, 144 N.W.2d 342 (1966); Aurora Fire & Marine Ins. Co. v. Kranich, 36 Mich. 289, 295 (1877); Schock v. Penn. Tp. Mutual Fire Ins. Ass'n of Lancaster County, 148 Pa.Super. 77, 24 A.2d 741 (1942); see also Dyer v. Bray, 208 N.C. 248, 180 S.E. 83 (1935) ("renewal" of negotiable instrument); Parchen V. Chessman 53 Mont. 430, 164 P. 531 (1917) (same); Gardella v. Greenburg, 242 Mass. 405, 136 N.E. 106 (1922) ("renewal" of lease); Appeal of Bormann, 81 Conn. 458, 71 A. 502 (1908) ("renewal" of license). The differences in premium and coverage between the two policies thus require the conclusion that the second was not a "renewal" of the first.[2]Russell v. State Farm Mutual Automobile Ins. Co., 47 Mich. App. 677, 209 N.W.2d 815 (1973); Springfield Fire & Marine Ins. Co. v. Hubbs-Johnson Motor Co., 42 S.W.2d 248, 252 (Tex.Com.App. 1931). See also United States Fire Ins. Co. v. Van Iderstyne, 347 So.2d 672 (Fla. 4th DCA 1977), in which the court held that an endorsement to a pre-existing policy which simply covered an additional automobile for an additional premium, constituted a "separate and severable" contract which required the company to offer UM coverage upon its issuance. Cf. State Farm Mutual Automobile Ins. Co. v. Glover, 202 So.2d 106 (Fla. 4th DCA 1967).
Because, for these reasons, the "renewal policy" exception to Section 627.727(1) did not apply, Hartford was obliged under the statute to offer UM coverage to the plaintiff at the time it issued the amended policy.[3] Since it admittedly did not, the trial court correctly determined that UM protection was deemed provided by operation of *601 law. See Home Ins. Co. v. Mendelson, 367 So.2d 1071 (Fla. 3d DCA 1979). The judgment under review is therefore
Affirmed.
HENDRY, J., dissents.
NOTES
[1] See Allstate Ins. Co. v. Duffy, 237 So.2d 225 (Fla. 3d DCA 1970).
[2] Hartford argues that the expansive definition of "renewal" contained in Sec. 627.728(1)(b), Fla. Stat. (1977) should be applied in the interpretation of Sec. 627.727(1). We do not agree. Sec. 627.728(1) specifically states that the definitions it contains apply to words "as used in this section." In fact, the remedial provisions of § 627.728, which restrict insurance companies in cancelling or failing to renew existing policies, would call for a broad or liberal interpretation of the term. 30 Fla.Jur. Statutes § 127 (1974). In contrast, the word "renewal" as contained in the proviso to § 627.727(1), must, as we have seen, supra, be given quite the opposite construction. Thus, the statutory definition contained in § 627.728 may not be employed in resolving the present issue. 30 Fla.Jur. Statutes § 105 (1974).
[3] It should be emphasized that our holding does no more than require insurance companies to secure a separate rejection of UM coverage  if that is the insured's "knowing" decision, Wilson v. National Indemnity Co., 302 So.2d 141 (Fla. 1st DCA 1974)  whenever it changes an existing policy in any material respect.