**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation of the State of Delaware, Defendant Below, Appellant,**

v.

**Virgil D. ARMS, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Jan. 16, 1984.

Decided: May 1, 1984.

F. Alton Tybout, Tybout, Redfearn, Casarino & Pell, Wilmington, for appellant.

Kenneth M. Roseman, D'Angelo, Ciconte & Roseman, Wilmington, for appellee.

Before HERRMANN, C.J., McNEILLY, HORSEY, MOORE and CHRISTIE, JJ., constituting the Court en Banc.

MOORE, Justice:

This appeal by State Farm Mutual Automobile Insurance Company (State Farm) presents us with a matter of first impression regarding the duty of an insurance company to offer additional uninsured vehicle coverage to an insured when certain changes occur in a policy. The Superior Court granted partial summary judgment to the plaintiff, Virgil D. Arms,[1] holding that under 18 *Del.C.* § 3902 defendant's failure to provide plaintiff the option to increase such coverage, when certain policy changes occurred, constituted a continuing offer which could be accepted by him at any time even, as in this case, after an accident.[2] Thus, the trial court construed plaintiff's policy as providing him uninsured vehicle coverage equal to the basic liability limits thereof. We agree and affirm.

## I.

On September 27, 1977, the defendant issued a six month policy to plaintiff and his wife on a 1969 Oldsmobile at a biannual premium of $114.20. The basic policy limits of liability for bodily injury were $100,000 per person, $300,000 per accident (100/300), and uninsured vehicle coverage of $10,000 per person and $20,000 per accident (10/20). In addition, there was coverage of up to $25,000 per accident for property damage, and the uninsured vehicle property damage coverage was $5,000 per accident. It is undisputed that State Farm initially offered the Arms uninsured motorist protection equal to their basic liability coverage, which was expressly declined in writing.

Subsequently, the Arms' policy was renewed on March 27, 1978 and again on September 27, 1978. However, on September 21, 1978, because Sarah Arms and the plaintiff had separated, the policy was revised solely in plaintiff's name to cover a 1967 Ford truck at a premium of $125.90. On October 11, 1978, plaintiff's policy was changed to cover a 1974 Mustang. The premium paid was $125.90. On November 9, 1978, the plaintiff acquired a 1977 Chrysler, and Arms requested and received comprehensive and collision coverage. His policy was changed accordingly. The total premium was $261.37. No offer of additional uninsured vehicle coverage was made to the plaintiff in connection with any of the foregoing policy changes. The policy on the Chrysler was renewed on March 27, 1979 to September 27, 1978, and on April 21, 1979, Arms was seriously injured in an automobile accident by an unknown motorist.

1. *Arms v. State Farm Mutual Automobile Insurance Co.*, Del.Super., 465 A.2d 360 (1983).

2. Delaware's uninsured vehicle statute, 18 *Del.C.* § 3902, as then in effect at the time of suit, and during these policy changes, provided:

(a) *No policy* insuring against liability arising out of the ownership, maintenance or use of any motor vehicle *shall be delivered or issued for delivery* in this State with respect to any such vehicle registered or principally garaged in this State *unless coverage is provided* therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run motor vehicles for bodily injury, sickness or disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle. *Except,* that no such coverage shall be required in or supplemental to a policy where rejected in writing, on a form furnished by the insurer describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy unless the coverage is then requested in writing by the named insured. The coverage herein required may be referred to as "uninsured vehicle coverage".

(b) *The amount* of coverage to be so provided shall not be less than the maximum limits for bodily injury, death and property damage liability insurance provided for under the motorist financial responsibility laws of this State. The coverage for property damage shall be subject to a $250 deductible for property damage arising out of any 1 accident unless the insurer and the insured agree in writing to a different deductible. *Each insured shall be offered the option* to purchase additional coverage for personal injury or death up to a limit of $300,000, but not to exceed the limits for personal injury set forth in the basic policy. *Id.* § 3902. (Emphasis added.)

Thereafter, State Farm paid Arms $10,-000, as the maximum uninsured vehicle coverage shown on the face of his policy. Arms then demanded that State Farm increase this coverage to equal his 100/300 liability limits, because defendant had failed to offer uninsured vehicle protection equal to his liability coverage, as required by 18 *Del.C.* § 3902. State Farm rejected plaintiff's demand, and this suit followed on April 21, 1981.

After some discovery the plaintiff moved for summary judgment, which was granted, construing the insurance policy to provide uninsured vehicle protection of 100/300. The Superior Court reasoned that 18 *Del.C.* § 3902(b) imposed an affirmative duty on insurers to offer additional uninsured vehicle coverage beyond the legal minimum, but not exceeding the basic personal injury limits of a policy. Accordingly, the court concluded that an insurer's failure to comply with section 3902(b) results in a continuing offer of such additional coverage which may be accepted at any time. *Arms*, 465 A.2d at 361. The trial court then found significant disparities in coverage between the original policy issued in September 1977, the October 1977 policy, and the November 1978 policy. The court determined that neither the November 1978 nor the March 1979 policies were a renewal of the original September 1977 agreement, and that no offer of additional coverage was made after September 1977. Consequently, the Superior Court held that a continuing offer of additional coverage existed, and construed Arms' policy to provide uninsured motorist coverage in the amount of 100/300. *Arms*, 465 A.2d at 362–363. Thereafter, the parties agreed to the entry of a judgment of $80,000 for the plaintiff, subject to the right of State Farm to appeal the legal issues to this Court.

State Farm argues that in this factual context the differences in the various policies issued to Arms were immaterial, and did not trigger any duty under section 3902 to offer additional uninsured vehicle coverage. In particular, State Farm construes

section 3902 to require an offer of additional coverage only when the policy is initially issued, or when a material change occurs therein. Defendant contends that changes in the vehicle insured, in premiums paid, and/or in coverages unrelated to basic personal liability or uninsured vehicle coverage are not material changes triggering an insurer's duty under section 3902. Thus, it is argued that the changes in Arms' policy were immaterial because they did not relate to matters affecting plaintiff's liability for bodily injury arising from an accident.

In response, Arms asserts that State Farm's duty under section 3902 to offer additional coverage in November 1978 is not so narrowly limited by the terms of the statute. In particular, Arms argues that issuance of the November 1978 policy, adding collision and comprehensive coverages, was not a renewal within the meaning of section 3902, because those changes were materially different from the September 1977 and October 1978 policies. Thus, plaintiff asserts that such material changes mandate a new offer of uninsured vehicle coverage, consistent with the statutory purpose and intent.

## II.

At the time of suit on April 21, 1981, 18 *Del.C.* § 3902(c), defined an uninsured motor vehicle as follows:

(c) For the purposes of this section the term "uninsured motor vehicle" shall be deemed also to include, subject to the terms and conditions of such coverage, an insured other motor vehicle where:

(1) The liability insurer of such other motor vehicle is unable because of its insolvency to make payment with respect to the legal liability of its insured within the limits specified in its policy; and

(2) The occurrence out of which such legal liability arose took place while the uninsured vehicle coverage required under subsection (a) above was in effect; and

(3) The insolvency of the liability insurer of such other motor vehicle existed at the time of or within 1 year after such occurrence.

Nothing contained in this subsection (c) shall be deemed to prevent any insurer from providing insolvency protection to its insureds under more favorable terms.

18 *Del.C.* § 3902(c) (1974).

■ Coverage for uninsured motor vehicles was developed by the insurance industry in response to the dramatic increase in automobile use and the concomitant rise in traffic accidents in the post-World War II era. Widiss, Perspectives on Uninsured Motorist Coverage, 62 *Nw.U.L.Rev.* 497, 497–99 (1967). See A. Widiss, *A Guide to Uninsured Motorist Coverage*, § 31.1 (1969). In particular, this new form of coverage sought to compensate insured motorists injured by financially irresponsible drivers who failed to purchase insurance and whose personal financial resources were insufficient to satisfy damage claims. *Id.* See Comment, When Enough Isn't Enough: Supplementing Uninsured Motorist Coverage in Pennsylvania, 54 *Temple L.Q.* 281, 283 (1981). The insurance industry also developed this form of coverage as an alternative to the compulsory liability insurance laws then in place, which failed to compensate victims, and as an alternative to more extensive legislative reforms. Comment, When Enough Isn't Enough: Supplementing Uninsured Motorist Coverage in Pennsylvania, 54 *Temple L.Q.* 281, 283 (1981). Given the continued increase in the number of motor vehicles on the road and off, the reduction in the driving age, and the exponential increase in medical expenses and concurrent decrease in federal medical care payments, the need to compensate injured persons through insurance coverage has become absolutely critical.

Section 2902(b)(2) of the Delaware Motor Vehicle Safety and Responsibility Act of 1976 specifies the minimum amount of liability insurance coverage which section 3902(b) makes applicable to uninsured motorist coverage. Specifically, section 2902(b)(2) requires in part that liability insurance shall:

"[i]nsure the person named therein ... against loss from the liability imposed by law for damages ... subject to limits exclusive of interest and costs ... as follows: $10,000, because of bodily injury to or death of 1 person in any 1 accident and, subject to said limit for 1 person, $20,000, because of bodily injury to or death of 2 or more persons in any 1 accident, and $5,000, because of injury to or destruction of property of others in any 1 accident."

21 *Del.C.* § 2902(b)(2) (1979).

This financial responsibility law is intended to protect the public in its possible claims against drivers of motor vehicles involved in an accident causing bodily injury or damage to property. *Hamon v. Richards*, Del. Super., 190 A.2d 612 (1963). To achieve that purpose, the statute establishes the minimum required insurance coverage, thereby ensuring at least some recovery to injured persons. *Id.*[3]

In sum, the statutory scheme mandates a floor of 10/20 uninsured motorist coverage unless rejected in writing. The law also mandates that every insurer offer additional uninsured motorist coverage up to a ceiling of the lesser of $300,000 or the

---

**3.** In 1982, after the action was filed, section 3902 was revised and amended. *See* 18 *Del.C.* § 3902 (Supp.1982). The new version restricted the definition of uninsured vehicle to those without the minimum insurance required by the state where the vehicle is principally garaged, to vehicles whose insurer denies coverage or is insolvent, or to hit-and-run vehicles. *Id.* § 3902(a)(3). The new version also provided that coverage in excess of the lesser of $300,000 or the policy's limit is deemed to be *under*

insured motorist coverage. See *id.* § 3902(b). Accordingly, when a policyholder is injured by a driver whose coverage is less than the policyholder's underinsured coverage, the injured policyholder may recover the difference from his own insurer. *Id.* § 3902(b)(1). Notwithstanding these changes, the written rejection element in section 3902(a) and the offer of additional coverage requirement of section 3902(b) remain in effect. *See id.* § 3902.

particular policy's personal injury limits. The legislative intent to compensate fully innocent drivers has been and continues to be evident on the face of our uninsured motorist laws.

Moreover, this intent to compensate innocent drivers has been applied by our courts in construing the uninsured motorist laws. *See State Farm Mutual Automobile Insurance Co. v. Hallowell,* Del.Supr., 426 A.2d 822, 825 (1981) [effectively overruled by the 1982 underinsured coverage amendment to 18 *Del.C.* § 3902(b)]; *Abramowicz v. State Farm Mutual Automobile Insurance Co.,* Del.Super., 369 A.2d 691 (1977), *aff'd,* Del.Supr., 386 A.2d 670 (1978) (holding physical contact not required for an uninsured motorist claim for hit-and-run accident because such a requirement would unnecessarily restrict legislative intent to compensate innocent drivers); *Goodman v. Continental Casualty Co.,* Del.Super., 347 A.2d 662 (1975) (allowing cumulative $20,000 recovery for two vehicles each insured for $10,000 mandatory minimum under same policy where only a single vehicle was involved in an accident).[4] *See also O'Hanlon v. Hartford Accident & Indemnity Co.,* 522 F.Supp. 332 (D.Del.1981).

█ In *O'Hanlon v. Hartford Accident & Indemnity Co.,* 522 F.Supp. 332 (D.Del. 1981), the plaintiff sought reformation of his uninsured motorist coverage from the 10/20 mandatory minimum of 100/300, his policy limit. *Id.* at 334. The insurer conceded the absence of any section 3902(b) offer of additional uninsured motorist coverage. *Id.* The court in *O'Hanlon* observed that section 3902(b)'s mandatory offer of additional coverage was intended to assure that each motorist was advised of his right to contract for uninsured motorist coverage in an amount equal to the lesser of his liability coverage or $300,000. *Id.* at 335. The court noted that this disclosure mechanism promoted informed decisions on automobile insurance coverage. *Id.* Accordingly, *O'Hanlon* held that if an insurer fails to offer additional uninsured motorist coverage pursuant to § 3902(b), then the insurer is deemed to have made a continuing offer of such additional coverage to the insured. *Id.* This offer remains open even after an accident occurs, absent compliance with section 3902(b). *Id.* We agree that this is a correct interpretation of Delaware law.

Here, State Farm admits that it did not offer additional uninsured vehicle coverage to the plaintiff on November 9, 1978, when his policy was changed to cover his newly-acquired 1977 Chrysler. To avoid a ruling that it had extended a continuing offer of additional coverage, which Arms could accept even after the accident, State Farm argues that the November 1978 policy change was not material and hence, no duty under 3902(b) ever arose. Defendant's nonmateriality argument is based on its view that the policy changes do not reflect an intent by Arms to affect his or any other driver's basic bodily injury liability protection arising from an accident.

█ We decline to accept this rather strained standard of materiality. Rather, we conclude that the plain language of section 3902(b) imposes a duty to offer additional uninsured motorist coverage whenever a new policy, other than a renewal, is issued. Section 3903 defines a renewal as "the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy be-

---

4. We are not alone in applying the compensatory aims underlying such legislation; the courts of other states have done so as well, particularly in holding that an insured did not intelligently and knowingly waive or reject uninsured motorist coverage. *See, e.g., Johnson v. Concord Mutual Insurance Co.,* 450 Pa. 614, 300 A.2d 61 (1973); *Lichtenburger v. American Motorists Insurance Co.,* 7 N.C.App. 269, 172 S.E.2d 284 (1970); *Oatis v. Dairyland Ins. Co.,* 20 Mich.App. 367, 174 N.W.2d 35 (1969); *Maryland Casualty Co. v. Wilson,* 6 Ariz.App. 470, 433 P.2d 650 (1967). See also Annot., 55 A.L.R.3d 216 (1974) (construction of statutes governing rejection or waiver of uninsured motorist coverage).

yond its policy period or term". 18 *Del.C.* § 3903(a)(2). The statute clearly contemplates that a renewal is merely the automatic continuation of the preceding policy, identical in form and substance, except as to date, and perhaps, the premium. *Cf. Schock v. Penn Tp. Mut. Fire Ins. Ass'n.,* 148 Pa.Super. 77, 24 A.2d 741 (1942); 13 J. Appleman, *Insurance Law and Practice,* § 7648, at 422 (1943 & Supp.1976). It is the change in the basic legal relationships between the parties which connotes a new policy, rather than a renewal, and thus triggers the offer requirement of section 3902(b). *See United States Fidelity & Guaranty Co. v. Waln,* Fla.App., 395 So.2d 1211, 1214 (1981); *United States Fire Insurance Co. v. Van Iderstyne,* Fla.App., 347 So.2d 672 (1977). *Accord. General Accident, Fire & Life Assurance Corp., Ltd. v. Mackenzie,* Fla.App., 410 So.2d 558, 559 (1982); *Hartford Accident & Indemnity Co. v. Sheffield,* Fla.App., 375 So.2d 598, 606 (1979).

This principle is evident by the terms of 18 *Del.C.* § 3902(a), as then in effect:

> *"No policy ... shall* be delivered or issued for delivery ... unless coverage is provided ... for ... uninsured or hit-and-run motor vehicles.... Except that no such coverage shall be required ... where rejected in writing, on a form furnished by the insurer, or upon any *renewal* of *such policy ..."* (Emphasis added.)

If anything, the entire thrust of the statute has been more strongly reinforced by the later 1982 amendments (see note 3).

Here, the insured comes squarely within the plain words of the law. He was issued a new policy on a newly-purchased car. In addition, Arms sought increased coverage in the form of comprehensive and collision coverage, recognizing that the automobile was more valuable than his prior vehicles.[5] Thus, plaintiff changed his policy in two material respects, the vehicle insured and the coverage provided for it. State Farm recognized the significance of these changed legal relationships by the issuance of a new policy. It was precisely at this time that information regarding additional uninsured vehicle protection was crucial to Arms' decision regarding coverage. These were not minor changes. They were substantive, and the passage of over fourteen months since the option for additional coverage was first explained to plaintiff indicates the importance of reminding the insured that such protection was available.

Insurance policies typically are not negotiated agreements. Consumers are presented with a complex form agreement on a take-it-or-leave-it basis. The industry has its own obscure terminology which, despite efforts toward plain language policies, is nevertheless difficult for the typical consumer to understand fully. In these respects, insurance agreements are classic examples of contracts of adhesion. *Hallowell,* 426 A.2d at 825. *Accord. State Farm Mutual Automobile Insurance Co. v. Johnson,* Del.Supr., 320 A.2d 345 (1974). The prospect of overbearing is sufficiently great that section 3902(b) was enacted to require dissemination of important information which many consumers, other than the most diligent, might not discover.

Finally, it is important to note that uninsured vehicle coverage was developed originally to compensate for injuries caused by hit-and-run drivers, as well as financially irresponsible motorists. Here, Arms was involved in a hit-and-run accident. The driver has never been identified. Plaintiff's coverage, despite his efforts, is less than adequate. Arms is, therefore, clearly within the class of innocent motorists which the uninsured motorist laws were designed to protect.

■ Thus, it is clear that State Farm breached its section 3902(b) duty to offer

---

5. Under the policy, comprehensive coverage included payments for loss to the insured's car except for loss due to collision in the amount of each loss. The collision coverage included payments for loss to the insured's car caused by collision in the amount of each loss in excess of the $100 deductible.

increased uninsured motorist coverage to Arms in November 1978 when he was issued a new policy. *See O'Hanlon,* 522 F.Supp. at 335. Accordingly, we conclude that State Farm's failure to observe that duty resulted in an implied extension of a continuing offer of additional uninsured motorist coverage to the extent of the lesser of $300,000 or the bodily injury limits in Arms' policy. Because he had a 100/300 policy, we agree that the Superior Court properly revised his uninsured motorist coverage to an equivalent amount.

State Farm makes much of the burden on insurers in being forced to offer additional uninsured motorist coverage whenever a new policy, other than a renewal, is issued. The burden is light, and the law admits of nothing less. To meet the burden, an insurer need only comply with the plain language of 18 *Del.C.* § 3902(b) (Supp.1982). Absent a written rejection of additional coverage communicated to the insurer or its agent within a reasonable time fixed by the insurer, the insurer may assume acceptance of the additional protection, write the coverage to the extent of the lesser of $300,000 or the bodily injury limits of the policy, charge the additional premiums accordingly, and have legal recourse to collect the same.

This result is consonant with the compensatory purpose of uninsured vehicle coverage and its statutory mandate of promoting increased use of this protection. Consonant with Delaware law, the offer of additional coverage must be made whenever the policy is changed in such respects as the vehicle insured, the coverage provided, and/or the identity of the named insured. *Cf. Waln,* 395 So.2d at 1214.

In sum, we conclude that in failing to offer additional uninsured motorist coverage to Arms pursuant to 18 *Del.C.* § 3902(b), State Farm extended a continuing offer of such coverage in an amount equal to Arms' basic liability coverage. Accordingly, we affirm the Superior Court's revision of plaintiff's policy.

\*     \*     \*

AFFIRMED.