Robert A. WHALEY and Barbara J. Whaley, his wife, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Civ. A. No. 83–846–JLL.

United States District Court, D. Delaware.

Oct. 17, 1984.

Frederick T. Haase, Jr., of Roeberg & Associates, P.A., Wilmington, Del., for plaintiffs.

Dennis D. Ferri of Ferri & Doelze, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This is a civil action based on diversity of citizenship [1] brought by the plaintiffs, Robert Whaley and his wife, Barbara, against defendant, Allstate Insurance Company ("Allstate"). (Docket Item ["D.I."] 1.) The Whaleys seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that they have $100,000 per person, $300,000 per accident of uninsured motorist insurance ("UM") under their Allstate automobile insurance policy, No. 0 08 464109 ("Policy"). (D.I. 1 at 1–2.) The Whaleys also seek to recover money judgments against Allstate, under the UM coverage, as a result of an automobile collision which occurred on February 1, 1983, and in which Mr. Whaley was allegedly seriously injured. Presently before this Court is plaintiffs' Motion for Partial Summary Judgment in their favor and against Allstate declaring that the Policy includes $100,000 per person and $300,000 per accident of UM due to Allstate's failure to offer plaintiffs higher limits of UM as required by 18 *Del.C.* § 3902(b). (D.I. 25.)

### I. FACTS

The facts relevant to plaintiffs' motion for partial summary judgment are not in dispute. They are as follows: on February 1, 1983, a collision occurred at the intersection of Rysing Drive and N. Cannon Drive, Edgemoor Gardens, Wilmington, Delaware,

---

**1.** Plaintiffs are citizens of the State of Delaware and the defendant is a corporation organized and existing by virtue of the laws of the State of Illinois. Jurisdiction is based on 28 U.S.C. § 1332.

involving an automobile operated by Mr. Whaley and an automobile operated by Cecilia Wyatt.[2]

On February 1, 1983, the Policy was in full force and effect. As written, the Policy provided bodily injury liability limits and UM limits, as follows: (1) Bodily Injury Liability Limits: $100,000/person, $300,000/accident; (2) UM limits: $10,000/person, $20,000/accident. (D.I. 26A at 19.) The Whaleys were insured under the Policy; Mr. Whaley was the named insured.

Although Mr. Whaley purchased the Policy sometime between 1956 and 1963, since at least April 1980, the Policy has been one of automatic renewal. (D.I. 17 at 1, 2.) The Policy renewal periods are six months each and run from April 25 to October 25, and then from October 25 to April 25. (*Id.*)

Originally, for the period October 25, 1980 to April 25, 1981, Mr. Whaley had three automobiles insured under the Policy: 1980 Chevette; 1967 Volkswagen; and 1979 AMC Spirit. (D.I. 26A at 7, 8.) A daughter of the Whaleys, Cynthia, was listed as the principal driver of the 1979 AMC Spirit.

On October 1, 1980, Cynthia Whaley purchased her own separate automobile insurance policy for the 1979 AMC Spirit. (D.I. 26A at 9-15.) The 1979 AMC Spirit and Cynthia were removed from Mr. Whaley's Policy effective October 25, 1980. These changes resulted in a reduced premium. Moreover, when the 1979 AMC Spirit and Cynthia were removed from the Policy, Allstate credited the Whaleys with $26.40 for a premium refund applicable to the 1979 AMC Spirit for the period October 2, 1980 to October 25, 1980. (D.I. 26 at 13-15.)

On October 9, 1981, Mr. Whaley eliminated the 1980 Chevette, one of the two remaining vehicles insured under his Policy and added a 1981 Chevette thereto. As a result, Allstate increased plaintiffs' premium.

According to Allstate, on May 3, 1980, it mailed a "Customer News Bulletin" to Mr. Whaley. (D.I. 12.) For purposes of the instant motion only, plaintiffs concede that the mailing took place, and that the purpose of this mailing was an attempt to discharge Allstate's duty to offer Mr. Whaley uninsured motorist limits equal to his bodily injury liability limits, under 18 *Del.C.* § 3902(b) in effect in May 1980.[3] Additionally, for purposes of the instant motion only, plaintiffs concede that Mr. Whaley received this mailing. Mr. Whaley, however, did not respond to this mailing. After May 3, 1980, Allstate did not offer the Whaleys UM limits equal to the bodily injury liability limits in the Policy.

## II. APPLICABLE LAW

The Delaware Supreme Court has ruled that pursuant to 18 *Del.C.* § 3902(b), every insurer must offer additional UM coverage up to a ceiling of the lesser of $300,000 or the particular policy's bodily injury liability limits whenever the automobile policy is changed in such respects as the vehicle insured, the coverage provided, and/or the identity of the named insured. *State Farm Mutual Automobile Insurance Co. v. Arms*, 477 A.2d 1060, 1066 (Del.1984). The defendant, in order to avoid the *Arms* case, advances two arguments. First, that no changes were made to the Policy with regard to the vehicle involved in the accident and therefore those changes that were made should not be deemed "material" requiring a renewed policy offer by Allstate

---

**2.** The status of Cecilia Wyatt as an uninsured motorist; the issue of liability for the collision; and the extent of Mr. Whaley's injuries remain at issue.

**3.** In 1980, 18 *Del.C.* § 3902(b) read:

The amount of coverage to be so provided shall not be less than the maximum limits for bodily injury, death and property damage liability insurance provided for under the motorist financial responsibility laws of this State.

The coverage for property damage shall be subject to a $250 deductible for property damage arising out of any 1 accident unless the insurer and the insured agree in writing to a different deductible. Each insured shall be offered the option to purchase additional coverage for personal injury or death up to a limit of $300,000, but not to exceed the limits for personal injury set forth in the basic policy.

of the option to purchase increased limits of UM coverage. (D.I. 29.) Second, defendant argues that 18 *Del.C.* § 3902, as recently amended, should be applied retroactively and/or interpreted by this Court to limit the application of the *Arms* case to the precise facts present in that suit and not extend it to the facts of the present case.

The plaintiffs, on the other hand, argue that: (1) the October 1, 1980 changes to the Policy concerning the vehicles insured under the Policy constituted a "replacement" or "new" policy and not a "renewal" thereby imposing on Allstate a duty to offer higher limits of UM coverage; (2) there is no "unmistakable legislative intent" to apply the amendments to section 3902(b) retroactively; and (3) the Delaware Supreme Court did not limit its holding to the particular facts of the case before it. (D.I. 26.)

### A. *Renewal—Materiality*

The threshold issue is whether the Whaleys' Policy after October 1, 1980 and again on October 9, 1981 remained a "renewal" policy or whether it became a "new" or "replacement" policy. This is important because the gravamen of *Arms* is that 18 *Del.C.* § 3902(b) imposes a duty to offer additional UM coverage whenever a *new* policy, *other than* a *renewal,* is issued. 477 A.2d at 1064.

Under 18 *Del.C.* § 3903(a)(2), a "renewal" is defined as "the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term." In *Arms,* the court noted that "the statute clearly contemplates that a renewal is merely the automatic continuation of the preceding policy, *identical in form and substance,* except as to date, and perhaps, the premium. (Citations omitted; emphasis added.) It is the change in the basic legal relationships between the parties which connotes a new policy, rather than a renewal, and thus triggers the offer re-

quirement of section 3902(b)." (Citations omitted.) 477 A.2d at 1065.

■ In this case, for purposes of 18 *Del.C.* § 3902(b), Mr. Whaley's Policy was no longer a "renewal" but a new or replacement policy, at least as of October 25, 1980, when Mr. Whaley eliminated: (1) the 1979 AMC Spirit from the Policy as an insured vehicle; and (2) Cynthia Whaley as a principal driver of an insured vehicle (the 1979 AMC Spirit). Additionally, the Policy was not a "renewal" but a new or replacement policy on October 9, 1981, when Mr. Whaley substituted a 1981 Chevette for a 1980 Chevette. When the plaintiff made material, substantive changes to the Policy on October 25, 1980 and October 9, 1981, comparable to the changes set forth in *Arms,* the Court finds that these changes to the Policy constituted a new or replacement policy, not a renewal policy, thereby triggering Allstate's obligation to offer additional uninsured motorist insurance.

### B. *Changes to Policy—Vehicle Involved*

■ In an attempt to distinguish the *Arms* case, Allstate argues that none of the changes that were made after the May 3, 1980 "Customer News Bulletin" were in connection with the 1967 Volkswagen which was the insured vehicle involved in the accident. The Court is not persuaded by Allstate's argument because there is no indication in the *Arms* case that the court intended to limit its application to automobile insurance policies in which the changes relate specifically to the insured automobile involved in a collision. The Delaware Supreme Court in *Arms* focused on substantive changes to the *policy,* not upon a particular insured automobile, irrespective of the number of automobiles insured or whether the insured was injured in one of the insured automobiles. In this case, Mr. Whaley was occupying one of the three insured vehicles at the time of the collision. Under his Policy, UM coverage existed at all times on Mr. Whaley, except when he occupied an uninsured vehicle owned by him or a vehicle owned by him which was

insured by another automobile insurance company. (D.I. 26A at A3–6.)

Inasmuch as Mr. Whaley was occupying one of the three vehicles insured under the Policy at the time of the collision, the Policy, therefore, provided UM coverage to him. Because the changes involved only one Policy, the Court concludes that the changes as to the insured vehicles are changes to the policy itself, within the meaning of the *Arms* case, regardless of whether the changes related to the vehicle involved in the accident.

### C. *Retroactivity*

■ Allstate argues that the decision of the Delaware Supreme Court in the *Arms* case should not be extended to cover the factual situation in the present action because 18 *Del.C.* § 3902, as amended on July 20, 1984 ("64 Del.L.Ch. 426"), which limits the holding in *Arms*, should be applied retroactively. The parties do not dispute that the Delaware Legislature attempted to limit the holding of the *Arms* case by enacting an amendment which, among other things, provides that UM insurance is not required in (1) an automobile insurance policy; (2) a renewal of such policy; or (3) a reinstatement, substitution, amendment, alteration, modification, transfer or replacement of such policy, when the insured rejects UM coverage in writing on a form furnished by the insurer, *unless* the insured then requests UM coverage in writing. 18 *Del.C.* § 3902(a)(1). (D.I. 29 at 5; D.I. 30 at 3.) The question therefore becomes whether or not the amended statute should be applied retroactively to the facts of this case.

Delaware courts have held that whether or not a statute is to be given retroactive effect is a matter of legislative intent and courts will be reluctant to arrive at such a construction unless the language of the statute permits of no doubt as to the meaning of the Legislature.[4] If there is *any* doubt whether an amendment was intended to operate retrospectively, the doubt *must* be resolved against such operation. *DiStefano v. Lamborn*, 7 Terry 195, 46 Del. 195, 83 A.2d 300, 301 (Del.Super.1951). *See also Wilmington Medical Center v. Bradford*, 382 A.2d 1338 (Del.1978); *Price v. All American Engineering Co.*, 320 A.2d 336 (Del.1974).

Since Allstate urges this Court to apply 64 Del.L.Ch. 426 retroactively, the burden rests with Allstate to show the "unmistakable retrospective legislative intent," as required by *Price v. All American Engineering Co.* Allstate, however, fails to meet this burden in that it points to no language in the statute concerning retroactive application. Furthermore, upon review of the amended statute, the Court perceives nothing which indicates a legislative intent that it be applied retroactively. Indeed, the operative verbs of 64 Del.L.Ch. 426, "shall be delivered," "shall offer," and "shall include" are future tense not past tense verbs. This language reveals that the legislators considered the amended statute to have prospective not retrospective application.

This Court therefore concludes that the cause of action stated by the Whaleys in their complaint filed on December 6, 1983, arising out of an automobile accident on February 1, 1983 and Allstate's failure to offer the Whaleys higher UM limits between October 1, 1980 and the date of the accident, is controlled by 18 *Del.C.* § 3902 as it existed at that time.

### D. *Continuing Offer*

If an insurer fails to offer additional UM coverage pursuant to section 3902(b), then the insurer is deemed to have made to the insured a continuing offer of such additional coverage which offer remains open *even after an accident* occurs, absent compliance with section 3902(b). *State Farm v.*

---

**4.** *Monacelli v. Grimes*, 9 Terry 122, 48 Del. 122, 99 A.2d 255, 266–67 (1953), *DiStefano v. Lamborn*, 7 Terry 195, 46 Del. 195, 83 A.2d 300, 301 (1951); *State v. Mills*, 44 Del. 125, 57 A.2d 99, 102 (1947); *Bowing v. Delaware Rayon Co.*, 8 W.W.Harr. 111, 38 Del. 111, 188 A. 769, 770 (1937).

*Arms,* 477 A.2d 1060, 1064. Because Allstate failed to comply with the statutory requirements and because the plaintiffs accepted Allstate's continuing offer when they made a demand for additional UM coverage even though the demand was made after the accident, this Court must conclude, based on the controlling law of Delaware, that the Policy should be revised so as to provide $100,000 per person, $300,000 per accident of UM coverage.[5]

Accordingly, the Court will grant the plaintiffs' motion for partial summary judgment on the issue framed by Count I of the Complaint, relating to the issue of the limit of uninsured motorist insurance in the Policy under consideration.

An order will be entered in accordance with this opinion.

---

**5.** At oral argument, the defendant contended that it satisfied 18 *Del.C.* § 3902(b)'s requirement of offering UM coverage limits equal to the insured's bodily injury liability limits, by including in its Customer News Bulletin, among other things, the following statement: "You can get more information about Coverage SS (Uninsured Motorist Insurance), the available limits and their cost and how you can add them to your policy by contacting your agent ...." (D.I. 26A at A–1.) In *Morris v. Allstate Insurance Co.,* C.A. No. 82C–0C–23, Taylor, J. (July 10, 1984) (Del.Super.), the Delaware Superior Court noted that one of the objectives of section 3902(b) is:

> to give to those who carry liability coverage in excess of the minimum statutory amount the full opportunity to carry uninsured (and now underinsured) coverage in an equal amount. The duty which is imposed by statute is the duty to offer such insurance so that the insured can make an *informed decision.* [Citation]. An *informed decision* can be made *only*

*if all of the facts* reasonably necessary for a person to be adequately informed to make a rational, knowledgeable and meaningful determination have been supplied. This test has been applied in determining whether an insurance option has been validly offered. [Citations]. One element which is essential to the exercise of *meaningful choice* is the *cost of the coverage.* [Citations].

Slip Opinion at 3–4 (emphasis added). For the purposes of this motion, however, the question concerning the statutory requirements and the Customer News Bulletin issued by Allstate to Mr. Whaley on May 3, 1980, becomes irrelevant. The statute requires the insurer to offer additional uninsured motorist coverage for *each* new or replacement policy. Because this Court has already determined that the October 25, 1980 policy and the October 9, 1981 policy are new or replacement policies and that Allstate failed to offer additional coverage on these dates, the status of the May 3, 1980 bulletin becomes immaterial.