Gregory L. RITTER and Mary L. Ritter, his wife, Plaintiffs,

v.

AMICA MUTUAL INSURANCE COMPANY, a Rhode Island corporation, Defendant.

Civ. A. No. 85–41–JLL.

United States District Court, D. Delaware.

April 8, 1986.

Mark Lynch of Roeberg & Associates, Wilmington, Del., and Anthony Carrozza, III of Francis Pileggi Law Offices, Woodlyn, Pa., of counsel, for plaintiffs.

George Seitz, III and Michael P. Kelly of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant.

OPINION

LATCHUM, Senior District Judge.

In this diversity action,[1] the plaintiffs, Gregory L. Ritter and Mary L. Ritter, who are citizens of Delaware, filed a complaint for a declaratory judgment and damages against Amica Mutual Insurance Company ("Amica"), a Rhode Island corporation.

---

1. This Court has jurisdiction over this case under 28 U.S.C. § 1332(a). Venue is properly laid under 28 U.S.C. § 1391(a).

(Docket Item ["D.I."] 1.) The plaintiffs allege that the defendant is liable to them for uninsured motorists coverage for personal injury or death of $300,000. The plaintiffs claim that the defendant violated 18 *Del.C.* § 3902(b) which governs its duty to offer uninsured motorists coverage to its customers in an amount equal to the lesser of his liability coverage or $300,000. The plaintiffs filed a motion for summary judgment on December 2, 1985 (D.I. 25) on Count I of their complaint seeking a declaratory judgment that the uninsured motorists benefits of their automobile liability insurance policy have single limits of $300,000 per accident. Because the Court agrees with the plaintiffs that there is no material issue on this point, it will grant their motion for partial summary judgment.

## FACTS

On July 1, 1984, Gregory Ritter was driving the plaintiffs' 1983 Plymouth Reliant with his wife, Mary Ritter, as a passenger in Pennsylvania when they collided with Dale Baker. (D.I. 1, ¶¶ 9–10.) Baker, an uninsured motorist,[2] crossed the center yellow line and struck the left side of the plaintiffs' Reliant, causing severe personal injuries and substantial damage to the Reliant. (*Id.* at ¶¶ 11–12.) At the time of the accident, the plaintiffs had an automobile policy in effect with Amica on the Reliant which provided bodily injury liability at $300,000 per accident and uninsured motorists coverage at $25,000 per accident. (*Id.* at ¶ 4.)

The plaintiffs first received insurance from Amica in 1977; thereafter their insurance policy was renewed each year. (D.I. 21 at 4.) Approximately one month before the renewal date, Amica sends "renewal notices" which resemble a Declarations page and which provide an opportunity to change the policy. (*Id.* at 5.) The policy which was in force at the time of the plaintiffs' accident was renewed on September 1, 1983. The policy insured the plaintiffs'

two vehicles, a 1979 Subaru and a 1983 Plymouth Reliant. (D.I. 1, Ex. A.) The renewal notice which was sent for the period September 1, 1983 to September 1, 1984 did not enclose a letter including a price quotation for increased uninsured motorists coverage. (D.I. 22 at 19.)

On May 31, 1983 the plaintiffs added their 1983 Plymouth Reliant to their policy. They also changed the named insured from Mary L. Ritter to Mary L. Ritter and/or Gregory L. Ritter, for an additional premium of $98. (D.I. 22 at 26; PX 6.) Richard W. Brackett, Branch Manager of the Blue Bell, Pennsylvania office where the plaintiffs were issued their policy with Amica, testified at deposition that he had no personal knowledge of any offers of higher uninsured motorists coverage that were made to the Ritters. (D.I. 22 at 27.) Brackett testified that along with the renewal notice, the company also sent an enclosure, called an Information Digest. Beginning in August 1983, the section on uninsured motorists coverage in the Information Digests were slightly modified, however with no substantial differences.

## THE LAW

On this summary judgment motion, the sole issue before the Court is whether the defendant satisfied the "offer" requirement of 18 *Del.C.* § 3902(b) so as to constitute an offer of higher limits of uninsured motorists coverage. On such a motion, a moving party must demonstrate that there is no issue as to any material fact in the case and that he or she is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 156, 90 S.Ct. 1598, 1607–08, 26 L.Ed.2d 142 (1970). The Court must also draw all inferences from the existing record in a light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Although the moving party bears the initial burden on

---

2. An uninsured motorist is a motorist who has no insurance in at least the amounts required by the financial responsibility law where the auto is principally garaged or registered. 18 *Del.C.* § 3902(a)(3)a.

the motion, the non-moving party bears the burden of producing material evidence to support its allegations and "may not rest upon the mere allegations or denials" of its pleading but must establish specific facts showing the existence of a "genuine issue for trial." Fed.R.Civ.P. 56(e). "[A] genuine issue means that the evidence must create a fair doubt, and wholly speculative assertions will not suffice." *Jersey Central Power & Light v. Township of Lacey,* 772 F.2d 1103, 1109 (3d Cir.1985).

The Delaware courts have uniformly interpreted Section 3902(b) as requiring a mandatory offer of additional coverage above the statutory minimum for uninsured motorists in order to assure that each motorist is advised of his right to contract for uninsured motorists coverage in an amount equal to the lesser of his liability coverage or $300,000.[3] *State Farm Mut. Auto. Ins. Co. v. Arms,* 477 A.2d 1060, 1064 (Del.Super.1984); *O'Hanlon v. Hartford Accident & Indemnity Co.,* 522 F.Supp. 332, 334 (D.Del.1981), *aff'd,* 681 F.2d 807 (3d Cir.1982). This disclosure mechanism is intended to promote informed decisions on automobile insurance coverage. *Arms,* 477 A.2d at 1064. Furthermore, if an insurer fails to offer addi-

tional uninsured motorists coverage pursuant to § 3902(b), the insurer is deemed to have made a continuing offer of such additional coverage to the insured. The offer remains open even after an accident without compliance with Section 3902(b). *Id.; O'Hanlon,* 522 F.2d at 334.

Section 3902(b) is triggered only when "a new policy" is offered. This encompasses a change in the policy coverage, but not a renewal of the policy. "It is the change in the basic legal relationships between the parties which connotes a new policy, rather than a renewal, and thus triggers the offer requirement of section 3902(b)." *Arms,* 477 A.2d at 1065.[4] This Court must heed the warning of the Delaware State Supreme Court that in interpreting automobile insurance contracts, the Court should be careful to protect the interest of consumers. As the court noted in *Arms,* insurance policies typically are not negotiated agreements but are classic examples of contracts of adhesion. Section 3902(b) was specifically enacted to prevent overbearing conduct by insurance companies and therefore to require dissemination of important information to consumers. *Id.*

The duty of an insurance company with respect to Section 3902 therefore is an af-

---

**3.** The version of 18 *Del.C.* § 3902(b) in effect in 1983 when the plaintiffs renewed their policy and added the Plymouth Reliant read as follows: "(b) Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $300,000 but not to exceed the limits for personal injury set forth in the basic policy. Such additional insurance shall be underinsured coverage."

This section refers only to "underinsured" coverage. However, the most recent version, effective July 20, 1984, states: "Such additional insurance shall *include* underinsured bodily injury liability coverage." 18 *Del.C.* § 3902(b) (emphasis added). In the very next section of § 3902 (in effect at the time of the accident), the statute stipulates that acceptance of the offer "amends the policy's uninsured coverage," thus treating underinsured coverage as a form of uninsured coverage. 18 *Del.C.* § 3902(b)(1). The courts which have addressed the issue of the § 3902(b) offer requirement have generally construed it to apply to uninsured coverage without referring to underinsured coverage. *See Morris v. Allstate Ins. Co.,* No. 82C–OC–23,

slip op. (Del.Super. July 10, 1984). To offer "higher uninsured coverage" technically makes no sense, since uninsured coverage is defined in terms of a legislatively predetermined amount as required by a state's financial responsibility law. 18 *Del.C.* § 3902(a)(3)a. Amounts above that statutory level are underinsured coverage. Nevertheless, this formal semantic distinction does not affect the substantive right of insurance customers to receive an affirmative offer of coverage in the amount of $300,000 or the limits for personal injury, whichever is lesser. Having clarified a point of potential confusion, the Court will follow precedent and use the phrase "higher uninsured coverage" when referring to § 3902(b).

**4.** The defendant correctly points out that § 3902(b) has been amended such that the offer of higher insurance is not required upon mere modification or amendment of a policy. (D.I. 27 at 11.) However, as the Court indicates later in this opinion, the July 1984 amendment of § 3902(b) has no affect on the instant case, in which the version of the section currently in force at the time of the accident did require the offer of higher insurance in such instances.

firmative one. The insurance company has an affirmative duty to offer the insured the option of higher uninsured coverage. *Schwartz et al. v. Centennial Ins. Co. et al.*, No. 5350, slip op. at 3 (Del.Ch. April 1, 1981); *O'Hanlon*, 522 F.2d at 388. The burden of proof and persuasion placed on the insurance company is a heavy one. As the court stated in *Schwartz*,

> The statute places the burden of offering the coverage upon the insurer and the burden of persuasion rests upon it to show that the coverage was offered and refused. To hold otherwise would be to ignore the plain meaning of the statute; that is, it gives the insured an option to purchase additional insurance if he so desires.

*Schwartz* at 4.

In *Morris v. Allstate Ins. Co.*, No. 82C–OC–23, slip op. (Del.Super. July 10, 1984), the court clarified the elements which are required in satisfying a valid offer under Section 3902(b). "An informed decision can be made only if all of the facts reasonably necessary for a person to be adequately informed to make a rational, knowledgeable and meaningful determination have been supplied." *Id.* at 4. An essential element in the exercise of a meaningful choice is the cost of the coverage. In addition, the communication to the insured must clearly offer to issue the specific coverage. That offer must also be made in the same manner and with as much emphasis as the insurer's other coverage. Any oral discussion of the proposed coverage should include oral reference to the offer of uninsured motorists coverage. *Id.* at 4–5.

As it stands the evidence falls far short of the affirmative offer and rejection required by Section 3902(b) as interpreted by the Delaware courts. The defendant argues that in addition to the Information Digests, there were oral communications with the plaintiffs in which such an offer "may" have been made. Thus, contends the defendant, disposition of this case on a motion for summary judgment is inappropriate. (D.I. 27 at 8–9.) Plaintiffs, for

their part, argue that there is no issue of disputed fact and that as a matter of law, the defendant did not satisfy the requirements of Section 3902(b).

First, examining the written documentary evidence, the Information Digests are woefully lacking in the affirmative language required by that section. The first Digest, received by the plaintiffs with each renewal until the September 1, 1983 renewal, after defining uninsured motorists coverage, reads: "In Delaware this coverage is required on all policies providing liability insurance unless rejected by the policyholder. The minimum limit is $25,000 each accident. Higher limits are available for an additional premium." (PX 7, p. 2.) In the subsequent Digest, only the third sentence of this relevant section was slightly modified: "Higher limits are available in the same amounts as shown for liability coverage." (PX 8, p. 2.)

The second piece of written evidence referred to by the defendant is a letter sent to Mary Ritter on June 16, 1983, which she apparently responded to by telephone. The letter concerned only a change in classification of automobiles driven to work. (PX 11.) A revised statement reflecting the change in premiums was sent to the plaintiffs. (PX 14.) In connection with this exchange, the defendant argues that "Brackett did not know whether or not plaintiffs were given a quote or statement of an additional premium to purchase higher uninsured motorists coverage in connection with their August, 1983 renewal of solicitations." (D.I. 27 at 9.) However, when questioned in deposition, Brackett conceded that the renewal notice sent for the period September 1, 1983 to September 1, 1984 did not contain a letter with a price quotation. (D.I. 22 at 30.)

Finally, the defendant argues that in an oral communication with the plaintiffs on June 1, 1983, it was possible that Brackett may have made an offer of higher limits of uninsured motorists coverage. (D.I. 22 at 32; D.I. 27 at 8.) A written record of the conversation, however, reflects only the fact that the coverage for the new car, the

1983 Plymouth Reliant, would be the same for the plaintiffs' other car. (PX 10.)

■ The Court must agree with the plaintiffs that as a matter of law the defendant did not make an affirmative offer as required by Section 3902(b). The only evidence which the defendant has offered to counter the plaintiffs' motion for summary judgment are the Information Digests—which on their face lack any indicia of an affirmative offer—and unsupported statements by Amica's agent that a higher offer "may have been" orally communicated to the plaintiffs. The Digests' statement that "higher limits are available" clearly does not possess the affirmative character which the statute requires. The Digests do not make the offer in the same manner and with as much emphasis as the insured's other coverage. Most important, they also do not discuss cost, a crucial factor in the exercise of a meaningful choice by the plaintiffs. *Morris,* slip op. at 4.

Brackett's tentative reference to an oral offer of higher uninsured coverage in order to supplement the deficiencies of the Digests is speculative at best. The defendant offers no other evidence to corroborate his statements—documentary or testimonial. Combined with the relatively heavy burden resting on the defendant, this proves fatal to its effort to make this issue a disputed issue of material fact. The severity of this burden of proof was illustrated in *Burton v. Nationwide Mut. Ins. Co.,* No. 82C–JA–116, slip op. (Del.Super. July 12, 1984). The defendant in *Burton* had offered evi-

dence of a mass mailing list with the plaintiff's name and last known address to raise an issue as to the plaintiff's statement that he never received the notice. The court ruled that this evidence was insufficient to survive a motion for summary judgment. Specifically, the court found that the plaintiff's specific testimony of non-receipt, without factors casting doubt on his credibility, would likely prevail over general evidence of the mailing. *Id.* at 3. The case for summary judgment is even stronger here, where the defendant's speculative allusions to possible oral statements on various occasions are contradicted by the plaintiffs' denial of ever having received such offers.

Moreover, by the terms of the statute the insured must clearly reject the offer of higher uninsured coverage. 18 *Del.C.* § 3902(a)(1). The defendant has produced no evidence whatsoever to show that the plaintiffs rejected the offer, if one had ever been made.

■ In a measure of last resort, the defendant argues that the effect of *Arms,* which required an offer of higher uninsurance coverage with each change or addition in insurance coverage, was retroactively abrogated by the Delaware Legislature by an amendment on July 20, 1984 of 18 *Del.C.* § 3902. (D.I. 27 at 11.) That amendment stated that the higher uninsurance coverage is not required "upon any renewal of such policy or upon any restatement, substitution, amendment, alteration, modification, transfer or replacement thereof...." 18 *Del.C.* § 3902(a)(1).[5] The

---

5. The relevant section reads as follows:
   § 3902. Uninsured and underinsured vehicle coverage; insolvency of insurer.
   (a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage

resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.
   (1) No such coverage shall be required in or supplemental to a policy when rejected in writing, on a form furnished by the insurer or group of affiliated insurers describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy or upon any reinstatement, substitution, amendment, alteration, modification, transfer or replacement thereof by the same insurer unless the coverage is then requested in writing by the named insured. The coverage

defendant then argues that although the amendment, which became effective less than three weeks after the accident at issue on July 1, 1984, is not "controlling," it can persuade the Court in interpreting the statute prior to amendment. Since the plaintiffs' policy was only modified by adding the Plymouth Reliant, the duty to offer the higher coverage did not arise. (D.I. 27 at 12.)

This Court rejected an identical argument in *Whaley v. Allstate Ins. Co.,* 595 F.Supp. 1023, 1027 (D.Del.1984). As the Court there stated, Delaware courts will only apply a statute retroactively when the language of the statute in question is unambiguous in expressing the legislative intent. *Monacelli v. Grimes,* 99 A.2d 255, 267 (Del.Supr.1953); *DiStefano v. Lamborn,* 83 A.2d 300, 301 (Del.Super.1951). Any doubt whether an amendment was intended to operate retroactively *must* be resolved against such operation. *Whaley,* 595 F.Supp. at 1027; *DiStefano,* 83 A.2d at 301. The Court has not changed its interpretation of the amendment to Section 3902 since *Whaley* was decided over a year ago that the statutory language contained no indication of legislative intent endorsing retroactive application. The operative words of the statute, "shall be delivered," "shall offer," and "shall include" are future tense, not past tense verbs. *Whaley,* 595 F.Supp. at 1027. In any event, there is no evidence that a higher offer ever was made when the plaintiffs first bought coverage with Amica, which even the amended statute would have required.

The Court will therefore grant summary judgment to the plaintiffs on Count 1 of their complaint seeking a declaratory judgment that the optional uninsured motorists coverage in the amount of $300,000 per accident is part of their Amica policy due to Amica's failure to validly offer such coverage.

A judgment will be entered in accordance with this opinion.

herein required may be referred to as uninsured vehicle coverage.